**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. et al., <br><br> Plaintiff, <br><br> v. <br><br> BOSTON SCIENTIFIC NEUROMODULATION CORP., <br><br> Defendant. | Civil Action No. 2:11-cv-1210 (SDW) (MCA) <br><br><br> **OPINION** <br><br><br> May 31, 2013 |

**WIGENTON**, District Judge.

Before the Court is defendant Boston Scientific Neuromodulation Corporation's ("BSNC" or "Defendant") motion to dismiss the Amended Complaint filed on behalf of the United States of America and the *Qui Tam* States[1] by Wendy Bahnsen ("Bahnsen") and Carolina Fuentes ("Fuentes"), (collectively "Relators") pursuant to Federal Rules of Civil Procedure 12(b)(6), 8(a) and 9(b) ("Motion to Dismiss"). Also before the Court are Defendant's Motion to Strike Confidential Information ("Motion to Strike") and Motion to Disqualify Counsel pursuant to the New Jersey Rules of Professional Conduct ("RPC") Rule 3.7(a) ("Motion to Disqualify").

This Court has jurisdiction over this action pursuant to 31 U.S.C. § 3732(a), 28 U.S.C. § 1331, and 28 U.S.C. § 1345. Venue is proper under 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1391(b) and (c).

---

[1] Qui Tam states include: California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Louisiana, Massachusetts, Michigan, Minnesota, Montana, Nevada, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Virginia, Wisconsin, and the District of Columbia ("*Qui Tam* States").

These motions are decided without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons set forth below, this Court will **DENY** the Motion to Dismiss, the Motion to Strike, and the Motion to Disqualify Counsel.

**FACTUAL AND PROCEDURAL BACKGROUND**

Defendant has stated that "[f]or purposes of this motion to dismiss only, the Relators' factual allegations are accepted as true." (Def.'s Mot. to Dismiss Br. at 1.) The following are the facts relevant to the pending motion.

**Parties**

  i.  *BSNC*

BSNC is a wholly-owned subsidiary of Boston Scientific Corporation ("BSC"). It is based in California and is incorporated under the laws of Delaware. (Am. Compl. ¶ 16.) BSNC markets and sells a spinal cord stimulation system called Precision Plus SCS System ("the System"). (Am. Compl. ¶ 16.) This device was approved by the Food and Drug Administration ("FDA") in April 2004 for the management of intractable back pain, and consists of both implanted and external parts. (Am. Compl. ¶¶ 16-17, 90.) The implanted part sends electrical signals through "leads" placed under the patient's skin along the spinal cord. (Am. Compl. ¶ 17.) The external equipment for the system includes a remote (Precision SCS Remote Model SC-5210), a charger (Precision SCS Charger 2.0 Model SC-5312), and an adhesive kit (Precision Adhesive Kit Model SC-6350). (Am. Compl. ¶¶ 17-20.) The cost for the entire system, including the external ancillary equipment, is approximately $30,000. (Am. Compl. ¶ 91.) Claims for these devices were billed to government programs, including Medicare and Medicaid, in New Jersey and throughout the United States. (Am. Compl. ¶¶ 16, 22.)

ii. *Relator Bahnsen*

Bahnsen is a resident of California and was employed by BSNC from March 31, 2008 until October 15, 2009. (Am. Compl. ¶ 7.) From March 31, 2008 until January 2009, Bahnsen worked in the Customer Service Department, and then from January 2009 until her date of termination, she worked as a Reimbursement and Claims Management Specialist in the Billings and Collections Department. (Am. Compl. ¶¶ 8-9.) Her job as a Claims Management Specialist was to submit claims for payment to Medicare, Medicaid, and private insurance companies. (Am. Compl. ¶ 9.) Bahnsen had previously been employed by other health care providers in billings and collections positions, and was certified as a medical biller in October 2004 by the Medical Association of Billers. (Am. Compl. ¶ 10.)

iii. *Relator Fuentes*

Fuentes is a resident of California and was employed by BSNC from May 2005 to June 2010. (Am. Compl. ¶ 13.) She was employed as an administrative assistant from May 2005 through March 2008, and was then transferred to the Billings and Collections Department in February 2009, where she worked until June 2010.[2] (Am. Compl. ¶ 13.)

**Claims**

i. *Fraudulent Billing Practices*

Relators allege that BSNC submitted fraudulent claims for payment to Medicare and government programs for the System's external equipment. (Am. Compl. ¶¶ 23, 25.) The alleged practices include submitting claims without a physician's order indicating medical necessity, changing/fabricating diagnosis codes on claim forms, and falsely certifying truthfulness on other government forms, including the CMS-1500 claim form. (Am. Compl. ¶ 23.) For example, Relators allege that since diagnosis code 724.2 (lumbago-back pain) is

---

[2] The record does not reflect Fuentes' specific position from March 2008 until February 2009.

financially advantageous to BSNC, Defendant would submit claims under this diagnosis code even when the system was used for an "off-label" purpose.[3] (Am. Compl. ¶¶ 33-35.) Relators also allege that the fraudulent practices stemmed from a backlog in the Billings and Collections Department, and that instead of implementing methods to deal with the backlog, BSNC increased pressure on billers to process claims. (Am. Compl. ¶¶ 27-28.)

Relators allege that these false claims caused government programs to approve and pay claims that should not have been paid, and that this violated the False Claims Act ("FCA").[4] (*See* Am. Compl. ¶¶ 44-54.)

*ii. Concealment of Defective Equipment*

Relators allege that BSNC trained and instructed its customer service representatives to avoid documenting device problems, in order to prevent such events from being reported to the FDA. (Am. Compl. ¶¶ 58-60, 68, 75.) Furthermore, Relators allege that BSNC denied replacement or reimbursement for defective devices and continued to market these devices. (Am. Compl. ¶¶ 61, 69.)

*iii. Kickback Schemes*

Relators allege that BSNC circumvented FDA guidelines through its kickback program, which "promoted the Precision Plus System beyond FDA-approved indications, and the provision of free services and other inducements to physicians." (Am. Compl. ¶ 88.) They allege that Defendant unlawfully promoted and prescribed the system for "off-label" uses, and would provide physicians with free reimbursement and prior authorization services in order to

---

[3] A purpose is deemed "off-label" when "a medical device is approved for one purpose or indication and [is] used outside this approved purpose." (Am. Compl. ¶ 89.)

[4] Relators include four tables of information as examples of fraudulent claims submitted to the government. (*See* Am. Compl. ¶¶ 37-41.) These tables include "information regarding the product description, the date and total amount BSNC billed Medicare for the product, the diagnosis code listed on the CMS-1500 form, the diagnosis code listed on the physician's order (if an order was ever obtained), and the name of the referring physician." (Am. Compl. ¶ 37.)

4

induce the prescribing of the System paid for by government programs. (Am. Compl. ¶¶ 92-99, 105-106.)

    *iv. Unlawful Retaliation*

Relators allege that they were unlawfully retaliated against for protected activity such as internal reporting and investigation of BSNC's unlawful conduct, and were forced to engage in this unlawful activity as a condition to maintaining their employment. (Am. Compl. ¶¶ 143-144.) For example, Bahnsen claims she was trained to routinely use a 724.2 diagnosis code even when she knew it to be fraudulent and illegal. (Am. Compl. ¶¶ 148-151.) Bahnsen complained about these practices. (Am. Compl. ¶ 154.) As of mid-July 2009, Relator Bahnsen raised these issues at weekly Billings and Collections meetings which caused friction within the Department, and led to Relators being banned from future meetings around September 2009. (Am. Compl. ¶¶ 154-157.)

Following the internal complaints, BSNC was informed that Bahnsen intended to file a whistleblower action, and her employment was subsequently terminated. (Am. Compl. ¶ 161.) Fuentes' employment was not terminated at that time; however, Fuentes claims she was made subject to a hostile work environment and was cut-off from computer access until she left BSNC. (Am. Compl. ¶ 162.)

    *v. Procedural History*

On March 2, 2011, Relators filed a *qui tam* complaint under seal against BSNC, alleging violations of the FCA, 31 U.S.C. § 3729 *et seq.*, as well as other state-law counterparts. (Compl.) After investigating for over a year, on February 24, 2012, the federal government declined to intervene, but the case was reopened on February 28, 2012. (Dkt. 8-9; Def.'s Mot. to Dismiss Br. at 3.)

Based on the foregoing, the Amended Complaint filed September 10, 2012, contains claims for FCA violations under 31 U.S.C. § 3729(a)(1), § 3729(a)(2), § 3730(h), and other state law counterparts.[5] (*See generally* Am. Compl. ¶¶ 164-357.)

On October 24, 2012, Defendant filed the following three separate motions which are present before this Court: (1) Motion to Dismiss; (2) Motion to Disqualify Counsel; and (3) Motion to Strike.

**LEGAL STANDARD**

*Motion to Dismiss*

*Rule 12(b)(6)*

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.,* 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However,

---

[5] The relevant statutes pursuant to which this action was brought, include the *qui tam* provisions of the Federal Civil False Claims Act, 31 U.S.C. § 3729 et seq.; the California False Claims Act, Cal. Gov't Code § 12650 et seq. (Deering 2000); the Colorado Medicaid False Claims Act, Colo. Rev. Stat. § 25.5-4-304 et seq.(2010); the Connecticut False Claims Act, Conn. Gen. Stat. § 17b-301a et seq. (2010); the Delaware False Claims and Reporting Act, Del. Code Ann. tit. 6, § 1201 et seq. (2000); the District of Columbia False Claims Act, D.C. Code § 2-308.13 et seq. (2000); the Florida False Claims Act, Fla. Stat. § 68.081 et seq. (2000); the Georgia False Medicaid Claims Act, Ga. Code Ann. § 49-4-168 et seq. (2007); the Hawaii False Claims Act, Haw. Rev. Stat. § 661-21 et seq. (2006); the Illinois False Claims Whistleblower Reward and Protection Act, 740 Ill. Comp. Stat. § 175/1 et seq. (2000); the Indiana False Claims and Whistleblower Protection Act, Ind. Code § 5-11-5.5 et seq. (2007); the Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. Ann. § 46:439.1 et seq. (2006); the Massachusetts False Claims Act, Mass. Gen. Laws ch. 12, § 5A et seq. (2007); the Michigan Medicaid False Claims Act, Mich. Comp. Laws § 400.601 et seq. (2007); the Minnesota False Claims Act, Minn. Stat. § 15C.01 et seq. (2011); the Montana False Claims Act, Mont. Code Ann. § 17-8-401 et seq. (1999); the Nevada False Claims Act, Nev. Rev. Stat. § 357.010 et seq. (2007); the New Jersey False Claims Act, N.J. Stat. Ann. § 2A:32C-1 et seq. (West 2007); the New Mexico Medicaid False Claims Act, N.M. Stat. Ann. § 27-14-1 et seq. (2007); the New York False Claims Act, N.Y. State Fin. Law § 187 et seq. (McKinney 2010); the North Carolina False Claims Act, N.C. Gen. Stat. § 1-605 et seq. (2010); the Oklahoma Medicaid False Claims Act, Okla. Stat. tit. 63, § 5053 et seq. (2007); the Rhode Island False Claims Act, R.I. Gen. Laws § 9-1.1-1 et seq. (2008); the Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-181 et seq. (2006); the Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code Ann. § 36.001 et seq. (West 2006); the Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.1 et seq. (2011); and the Wisconsin False Claims for Medical Assistance Law, Wis. Stat. § 20.931 et seq. (2007) ("State *qui tam* statutes").

the claims must call "for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234. Similarly, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

*Rule 9(b)*

Pursuant to Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." For actions based on the FCA, the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply. *See Mason v. Coca-Cola Co.,* 774 F. Supp. 2d 699, 702 (D.N.J. 2011).

<u>Motion to Strike</u>

Federal Rule of Civil Procedure 12(f) allows for a court to strike any "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Generally, motions to strike are highly disfavored. *F.T.C. v. Hope Now Modifications, LLC*, No. 09-1204, 2011 WL 883202 at *1 (D.N.J. March 10, 2011) (citing *Garlanger v. Verbeke*, 223 F. Supp. 2d. 596, 609 (D.N.J. 2002)). Motions to strike are "'not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties.'" *Tonka Corp. v. Rose Art Industries, Inc.*, 836 F. Supp. 200, 217 (D.N.J. 1993) (quoting *River Road Devel. Corp. v. Carlson Corp.*, No. 89-7037, 1990 WL 69085 at *3 (E.D. Pa. May 23,1990)); *see also J&A Realty v. City of Asbury Park*, 763 F. Supp. 85, 87 (D.N.J. 1991.) "'[S]triking a pleading should be sparingly used by courts. It is a drastic remedy to be resorted to

7

only when required for the purposes of justice." *Id.* (quoting *United States v. Consolidation Coal Co.*, No. 89-2124, 1991 WL 333694 at *1 (W.D. Pa. July 5,1991)).

*Motion to Disqualify Pursuant to RPC 3.7(a)*

"'[M]otions to disqualify are viewed with 'disfavor' and disqualification is considered a 'drastic measure which courts should hesitate to impose except when absolutely necessary.'" *Carlyle Towers Condominium Ass'n, Inc. v. Crossland Sav., FSB,* 944 F. Supp. 341, 345 (D.N.J. 1996) (citations omitted). "Therefore, close judicial scrutiny of the facts of each case is 'required to prevent unjust results.'" *Id.* (quoting *Gould Inc. v. Mitsui Mining & Smelting Co.*, 738 F. Supp. 1121, 1126 (N.D. Ohio 1996)). "'Although doubts are to be resolved in favor of disqualification, the party seeking disqualification must carry a 'heavy burden' and must meet a 'high standard of proof' before a lawyer is disqualified.'" *Carlyle Towers Condominium Ass'n, Inc.*, 944 F. Supp. at 345 (quoting *Alexander v. Primerica Holdings, Inc.*, 822 F. Supp. 1099, 1114 (D.N.J. 1993)). Furthermore, "'a party's choice of counsel is entitled to substantial deference.'" *Alexander*, 822 F. Supp. at 1114 (citations omitted). Permitting a litigant to retain his or her choice of counsel is a countervailing policy to be considered against disqualification. *U.S. v. Miller*, 624 F.2d 1198, 1201 (3d. Cir. 1980).

**DISCUSSION**

*Motion to Dismiss*

"To establish a prima facie case under the FCA, [a] relator must prove: '(1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent.'" *U.S. ex rel. Hefner v. Hackensack University Medical Center*, 495 F.3d 103, 109 (3d Cir.2007) (citing *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 182 (3d Cir.2001)).

Violations of the federal FCA implicate fraud, and therefore the claims must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Foglia v. Renal Ventures Management, LLC*, 830 F. Supp. 2d 8, 13 (D.N.J. 2011.) "The Third Circuit has held that Fed. R. Civ. P. 9(b) requires plaintiffs to plead the circumstances of the alleged fraud with particularity to ensure that defendants are placed on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of fraud." *Id.* (internal citation and quotation marks omitted); *U.S. ex rel. LacCorte v. SmithKline Beecham Clinical Laboratories, Inc.*, 149 F.3d 227, 234 (3d Cir. 1998.)

In the instant matter, Defendant makes numerous arguments regarding the allegations presented, which are discussed below. However, many of these arguments go to the merits of the claims, rather than the pleading requirements.

*False Billing, Kickbacks, and False Certifications*

First, Defendant argues that Relators' allegations of false billing fail as a matter of law, as its actions were entirely permissible under the relevant Medicare and Medicaid billing guidelines. (Def.'s Mot. to Dismiss 6-10.) Defendant asserts that its billing practices are "merely consistent with a theory of liability, rather than leading one to believe there is plausible liability, [and] do not satisfy the pleading requirement of Rule 8(a)." (*Id.* 9-10.) Defendant contends that under these guidelines, separate physicians' orders are not required in order to prove medical necessity for the accessories to the prosthetic device. (*Id.* 8.) Essentially, Defendant argues that if an initial physician's order evidences the need for the System, the replacement of the external accessories, including the remote, charger, and adhesive kit, do not require a further order. (*Id.* 9.)

Next, Defendant argues that "it is appropriate in certain instances for a supplier to provide diagnosis codes," and that in their opposition papers, Relators mischaracterize their Amended Complaint. (Def.'s Mot. to Dismiss 10; Def.'s Mot. to Dismiss Reply 4-5.) According to Defendant, the guidelines provide that when a physician "provide[s] only a narrative description of the diagnosis, rather than the specific diagnosis code," suppliers can utilize various avenues to determine the appropriate diagnosis code. (Def.'s Mot. to Dismiss 11.)

Defendant, citing *United States ex rel. Wilkins v. United Health Group, Inc.*, 659 F.3d 295 (3d Cir. 2011), also argues that the diagnosis code is immaterial to the approval of a claim or the amount paid on a claim. (Def.'s Mot. to Dismiss 11.) In *United States ex rel. Wilkins v. United Health Group, Inc.*, the Third Circuit notes that the FCA defines the term "material" as "'having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.'" 659 F.3d at 303 (citing 31 U.S.C. § 3729(b)(4)).

However, the Amended Complaint includes references to the lack of orders and/or diagnosis codes for specific items, as well as training Relators to for example "to forget contacting doctors to obtain Orders and diagnosis codes, and instead just routinely use code 724.2." (Am. Compl. ¶¶ 28, 29, 148, 151.) Overall, this Court finds that these claims are sufficiently pled.

Additionally, Defendant denies claims regarding the payment of kickbacks and false certifications of compliance as alleged by the Relators. The Anti–Kickback Statute prohibits

> knowingly and willfully [offering or paying] any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind (A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or (B) in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility,

> service, or item for which payment may be made in whole or in
> part under a Federal health care program.

42 U.S.C. § 1320a-7b(b)(2). Relators have provided specific allegations that are sufficient for their claims regarding kickbacks to proceed at this stage. (Am. Compl. ¶¶ 98-100.) Further, compliance with the Anti-Kickback Statute is material to the Government's decision to pay under Medicare and Medicaid. *See United States ex. rel, Kosenke v. Carlisle HMA, Inc.*, 544 F.3d 88, 94 (3d Cir. 2009).

*Retaliation*

Defendant also argues that the Relators have not sufficiently alleged that they engaged in protected activities. (*See* Def.'s Mot. to Dismiss at 32-35; Def.'s Mot. to Dismiss Reply Br. 14.)

To establish a claim for retaliation under 3730(h), a relator must show that "(1) he engaged in protected conduct, (i.e., acts done in furtherance of an action under § 3730)"; and "(2) that he was discriminated against because of his protected conduct." *U.S. ex rel. Hefner v. Hackensack University Medical Ctr.*, 495 F.3d 103, 110-11 (3d Cir. 2007) (internal citations omitted). For a plaintiff to demonstrate that he was discriminated against as a result of his conduct in furtherance of a FCA suit, a plaintiff must demonstrate that "(1) his employer had knowledge he was engaged in protected conduct; and (2) that his employer's retaliation was motivated, at least in part, by the employee's engaging in protected conduct." *Id*. (internal citation and quotation marks omitted). Further, as to "what activities constitute protected conduct, the case law indicates that protected [conduct] requires a nexus with the in furtherance of prong of [a False Claims Act] action . . . This inquiry involves determining whether [plaintiff's] actions sufficiently furthered an action filed or to be filed under the [False Claims Act] and, thus, equate to protected [conduct]." *Hutchins*, 253 F.3d at 187 (internal citations and

quotation marks omitted). "Protected conduct" includes "investigation for, initiating of, testimony for, or assistance in" a FCA suit. 31 U.S.C. § 3730(h).

Further, the Third Circuit has noted that

> Determining what activities constitute "protected conduct" is a fact specific inquiry. But the case law indicates that "the protected conduct element . . . does not require the plaintiff to have developed a winning qui tam action . . . It only requires that the plaintiff engage[ ] in acts . . . in furtherance of an action under [the False Claims Act]." . . . Under the appropriate set of facts, these activities can include internal reporting and investigation of an employer's false or fraudulent claims . . . ("[It] would [not] . . . be in the interest of law-abiding employers for the [False Claims Act] to force employees to report their concerns outside the corporation in order to gain whistleblower protection. Such a requirement would bypass internal controls and hotlines, damage corporate efforts at self-policing, and make it difficult for corporations and boards of directors to discover and correct on their own false claims made by rogue employees or managers.")

*Hutchins*, 253 F.3d at 187 (quoting *U.S. ex rel. Yesudian v. Howard University*, 153 F.3d 731, 739-40 (D.C. 1998)).

In the instant matter, contrary to Defendant's arguments, Relators have alleged specific facts to support their claims that Defendant did not bill in compliance with Medicare guidelines, and that could demonstrate that they engaged in protected activities. As previously noted, at this stage, this Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff. . . ." *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted).

Relators have pled with adequate particularity their claims, including those regarding improper billing, adverse event reporting, off-label allegations, and kickback payments, as well as retaliation. The Amended Complaint, when viewed in the light most favorable to the plaintiff,

as necessary for a motion to dismiss pursuant to 12(b)(6), is sufficient to set forth claims upon which relief may be granted. Defendant's Motion to Dismiss will be denied.

*Motion to Disqualify*

Under Local Civil Rule 103.1, the Rules of Professional Conduct are applicable to attorneys admitted to this Court. *See generally Hunt Const. Group, Inc. v. Hun School of Princeton*, No. 08–3550, 2010 WL 1752198 (D.N.J. 2010). RPC 3.7 provides that:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) The testimony relates to an uncontested issue; (2) The testimony relates to the nature and value of legal services rendered in the case; or (3) Disqualification of the lawyer would work substantial hardship on the client, (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by RPC 1.7 or RPC 1.9.

RPC 3.7. Further, RPC 3.7(a) does not require certainty that an attorney will testify; however, there must be a likelihood that the attorney will be a necessary witness. *Biermann v. Bourquin*, No. L-2880-09, 2012 WL 4008956 at *2 (N.J. Super A.D. Sept. 13, 2012) (citing *J.G. Ries & Sons, Inc. v. Spectraserv Inc.*, 384 N.J. Super 216, 230 (App. Div. 2006)). "Once counsel recognizes that opposing counsel is 'likely to be a necessary witness,' a motion to disqualify opposing counsel should be filed." *Freeman v. Vicchiarelli*, 827 F. Supp. 300, 302 (D.N.J. 1993). The burden rests on the party seeking to disqualify to put forth enough evidence establishing the likelihood that the attorney will be a necessary witness at trial. *Oswell v. Morgan Stanley Dean Writer & Co., Inc.*, No. 06-5814, 2007 WL 2446529 at *3 (D.N.J. Aug. 22, 2007).

RPC 3.7(a) only prohibits an attorney who may be a necessary witness from acting as an advocate *at trial*, but does not prevent representation during the pre-trial stage. *Tangible Value, LLC v. Town Sports Intern. Holdings, Inc.*, No. 10-1453, 2012 WL 4660865 (D.N.J. Oct. 1,

2012) (emphasis added); *see also Main Events Production, LLC v. Lacy*, 220 F. Supp. 2d. 353, 355-56 (D.N.J. 2002). An attorney is not disqualified immediately even if he will likely become a necessary witness at trial. *Id.*

An attorney is considered a necessary witness when he can provide evidence that is not available through any other means. *Biermann*, 2012 WL 4008956 at *2 (internal citation omitted). "[F]or purposes of RPC 3.7, a witness is 'truly necessary' if there are no documents or other witnesses that can be used to introduce the relevant evidence." *Oswell,* 2007 WL 2446529 at *4 (internal citation omitted). Furthermore, an attorney is not considered necessary when his knowledge of the relevant facts came from conversations with his clients and it is well within their personal knowledge. *Spinella Companies v. Metra Industries, Inc.*, No. 05-5075, 2006 WL 1722626 at *4 (D.N.J. June 22, 2006).

In the instant matter, Defendant contends that Relators' attorney, Nicholas Harbist ("Harbist"), must be disqualified as Relator's counsel. Defendant argues that Harbist had access to BSNC's confidential and proprietary patient claims information, since he helped Relators include it in their Amended Complaint. Defendant claims that it intends to sue Relators in breach of contract for retaining this confidential information after their employment ceased, and since Harbist is the only other individual who viewed this information, he will be a necessary witness. (Def.'s Mot. to Disqualify 2.)

At this juncture in the case, this Court finds no basis for disqualifying Relators' counsel. Defendant relies on *Freeman v. Vicchiarelli*, 827 F. Supp. 300, 302 (D.N.J. 1993), in support of its argument that RPC 3.7 applies during the pre-trial stage; however this proposition has been clarified in *Main Events Production, LLC v. Lacy,* 220 F. Supp. 2d. 353 ("*Lacy*"). In *Lacy,* the Court explained that the decision in *Freeman* was predicated on New Jersey cases and opinions

"which relied on older versions of the advocate witness rule found in the Disciplinary Rules of the Code of Professional Responsibility." *Id.* at 356. Under the current version of RPC 3.7, the *Lacy* court held that the decision in *Freeman* "is at odds with the clear language of RPC 3.7," prohibiting an attorney from acting as "an advocate *at trial.*" *Id.* (emphasis added.) Therefore, even if Defendant were to be correct that Harbist may become a necessary witness at trial, this does not preclude him under RPC 3.7 from representing Relators during this pre-trial stage.

*Motion to Strike*

The Department of Health and Human Services ("HHS") enforces HIPAA.[6] The regulations promulgated pursuant to HIPAA (known as the Standards for Privacy of Individually Identifiable Health Information (the "Privacy Rule")) directly regulate three types of "covered entities": (1) health care providers, which transmit health information electronically; (2) health plans, such as health insurers and HMOs; and (3) health care clearinghouses. *See* 45 C.F.R. §§ 160.102 and 160.103.

According to the final Privacy Rule, "[HIPAA] only applies to covered entities, not their workforces, it is beyond the scope of this rule to directly regulate whistleblower actions of members of a covered entity's workforce." 45 Fed. Reg. 82,501, 82,502 (Dec. 28, 2000).

A covered entity may not use or disclose protected health information, except as permitted or required by the statute. 45 CFR § 164.502. Pursuant to an exception in 45 CFR § 164.502(j)(1),

> A covered entity is not considered to have violated the requirements of this subpart if a member of its workforce or a

---

[6] "The HIPAA Privacy Rule establishes national standards to protect individuals' medical records and other personal health information and applies to health plans, health care clearinghouses, and those health care providers that conduct certain health care transactions electronically." *The Privacy Rule*, Department of Health and Human Services, available at http://www.hhs.gov/ocr/privacy/hipaa/administrative/privacyrule/index.html (last visited May 31, 2013).

business associate discloses protected health information, provided that:

(i) The workforce member or business associate believes in good faith that the covered entity has engaged in conduct that is unlawful or otherwise violates professional or clinical standards, or that the care, services, or conditions provided by the covered entity potentially endangers one or more patients, workers, or the public; and

(ii) The disclosure is to:

(A) A health oversight agency or public health authority authorized by law to investigate or otherwise oversee the relevant conduct or conditions of the covered entity or to an appropriate health care accreditation organization for the purpose of reporting the allegation of failure to meet professional standards or misconduct by the covered entity; or

(B) An attorney retained by or on behalf of the workforce member or business associate for the purpose of determining the legal options of the workforce member or business associate with regard to the conduct described in paragraph (j)(1)(i) of this section.

The HHS has stated that "[o]ur purpose in including this provision is to make clear that we are not erecting a new barrier to whistleblowing, and that covered entities may not use this rule as a mechanism for sanctioning workforce members or business associates for whistleblowing activity." *See* 45 Fed. Reg. 82,501, 82,636 (Dec. 28, 2000).

It is undisputed that the Relators were employees of BSNC when they obtained the relevant information. Further, the Relators argue that they were acting in good faith to report activities of the covered entity they believed to be unlawful. (*See* Relator's Opp'n 18-20.)

While patients should not be identifiable, there is no specific requirement to remove the name of physicians or providers from the records. As reflected by the *Guidance Regarding Methods for De-Identification of Protected Health Information in Accordance with the Health Insurance Portability and Accountability Act (HIPAA) Privacy Rule,* published by the HHS on

November 26, 2012, generally the focus for de-identification for HIPAA records is the names of the individuals associated with the health information (patient) and their employers, and relatives to be suppressed. In the instant matter, the Amended Complaint does not disclose patient information. Assertions by BSNC that such information could be determined by cross-referencing treating physicians, dates of services and locations are not persuasive.

**CONCLUSION**

For the reasons set forth above, this Court will **DENY** Defendant's Motion to Dismiss, Motion to Strike, and Motion to Disqualify.

<u>s/ Susan D. Wigenton, U.S.D.J.</u>

Orig:      Clerk
cc:        Parties
            Magistrate Judge Arleo