<u>FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA** *ex rel.* **WENDY A. BAHSEN** *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> **BOSTON SCIENTIFIC NEUROMODULATION CORPORATION,** <br><br> *Defendant.* | **Civil Action No. 11-1210** <br><br> **OPINION** |

This matter comes before the Court on Defendant Boston Scientific Neuromodulation Corporation's ("Boston Scientific") appeal of Magistrate Judge Steven C. Mannion's decision denying Boston Scientific's Motion to Disqualify Blank Rome, Plaintiff's counsel, for an imputed former client conflict under New Jersey Rules of Professional Conduct 1.10 and 1.9. The central dispute concerns whether an attorney who is held by a law firm out as having a general and continuing relationship with it is "associated with" that firm for conflicts purposes under Rule 1.10. The Court finds the attorney here is associated with the firm, and so reverses the magistrate judge's decision.

**I.     BACKGROUND**

In this case, relators Wendy Bahnsen and Carolina Fuentes allege that Boston Scientific perpetrated a fraudulent billing scheme and defrauded various health care programs from 2006 through the present. Both relators claim that they were unlawfully terminated because they complained to management about the fraudulent billing.

1

Ritu Hasan was employed as in-house corporate counsel and compliance counsel for Boston Scientific from March 2009 through February 2011. While employed there, she was engaged in internal investigations conducted by Boston Scientific in direct response to many of the allegations made by relators here regarding billing improprieties and retaliation. She was also involved in crafting Boston Scientific's findings and strategies to respond to these allegations. Ms. Hasan subsequently left Boston Scientific and began work at an unnamed client ("Client") of Blank Rome in April 2011. In April 2013, the Client approached Blank Rome and requested assistance with a personnel matter. Allison Friend Decl., Dkt. No. 164-1. On September 10, 2013, Blank Rome hired Ms. Hasan and immediately "seconded" her back to the client. Friend Dep. Tr. 26:8. Blank Rome and the Client executed a Secondment Agreement, which provided that Ms. Hasan "shall not continue to work on behalf of the Firm during the Term" of the secondment.

On March 3, 2013, relators, represented by Blank Rome, brought this case against Boston Scientific. Compl., Dkt. No. 1. In early 2014, Boston Scientific discovered that Ms. Hasan had been hired by Blank Rome as an associate in its Los Angeles office. Boston Scientific demanded Blank Rome's withdrawal from the case due to former client conflicts under Rules 1.9 and 1.10. Blank Rome declined to withdraw.

Boston Scientific's motion to disqualify was heard by Magistrate Judge Mannion on March 17, 2015. Hr'g Tr., Dkt. No. 174. During that hearing, Magistrate Judge Mannion read into the record his opinion denying Boston Scientific's motion to disqualify. Tr. 23:21-34:6. Ms. Hasan was disqualified from representing Plaintiffs under Rule 1.9. She had worked as in-house counsel for Defendant Boston Scientific from March 2009 to February 2011. Tr. 29:2-4. The current matter is substantially related to prior matters of Ms. Hasan's, Magistrate Judge Mannion found, because Ms. Hasan (1) "worked on matters that involved similar allegations by relators concerning

billing improprieties and retaliations" which had facts "relevant and material to the instant matter;" (2) she was "involved with Boston Scientific's internal investigation regarding many of the same allegations as in this suit;" and (3) "her name appears on privilege logs [produced] in the instant case where she is listed as a participant in privileged communications regarding relators and many of their allegations." Tr. 29:8-24. Plaintiffs' interest is clearly adverse to Boston Scientific's interests. Tr. 29:24-30:1.

Next, Magistrate Judge Mannion found that Ms. Hasan's conflict could not be imputed to Blank Rome because, under Rule 1.10, she was not "associated with" the firm. In his analysis, the magistrate judge applied New Jersey Superior Court Advisory Committee on Profession Ethics Opinion Number 632's standard, which establishes that association between a temporary lawyer and a law firm turns on a functional analysis of the facts and circumstances involved. Tr. 31:1-23. Conducting this functional analysis, the magistrate judge concluded that Ms. Hasan did not have access to confidential information. Tr. 32:1-23. There was also no evidence of a risk of improper disclosure. Tr. 32:24-33:21. As a result, the magistrate judge found that Ms. Hasan's conflict could not be imputed to the firm. He did not analyze whether Blank Rome had, or held out itself as having, a general and continuing relationship with Ms. Hasan.

Boston Scientific now appeals the magistrate judge's decision and seeks to disqualify Blank Rome from representation of Plaintiffs based on an imputed conflict under Rule 1.10.

## II.   LEGAL STANDARD

### A.  Standard of Review of Magistrate Decision

A district court judge may only reverse a magistrate judge's opinion on pretrial matters if it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A); see also Exxon Corp. v. Halcon Shipping Co., Ltd., 156 F.R.D. 589, 591 (D.N.J. 1994). A finding is clearly

3

erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." South Seas Catamaran, Inc. v. M/V Leeway, 120 F.R.D. 17, 21 (D.N.J. 1988); see also United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). A ruling is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law. Gunter v. Ridgewood Energy Corp., 32 F. Supp. 2d 162, 164 (D.N.J. 1998).

### B. Motions to Disqualify

"The district court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it." United States v. Miller, 624 F.2d 1198, 1201 (3d Cir. 1980); accord In re Corn Derivatives Antitrust Litig., 748 F.2d 157, 161 (3d Cir. 1984). "As a general rule, the exercise of this authority is committed to the sound discretion of the district court . . . ." Miller, 624 F.2d at 1201.

Although motions to disqualify a party's counsel are viewed with disfavor and parties seeking to disqualify opposing counsel carry "a heavy burden and must satisfy a high standard of proof," any "doubts are to be resolved in favor of disqualification." Essex Chem. Corp. v. Hartford Accident & Indem. Co., 993 F. Supp. 241, 246 (D.N.J. 1998) (citations omitted). When deciding motions to disqualify, courts "must balance the hardships to the client whose lawyer is sought to be disqualified against the potential harm to the adversary should the attorney be permitted to proceed." Id. at 254 (citations omitted). Courts must also consider their "obligation to preserve high professional standards and the integrity of the proceedings." Id. (citations omitted).

### C. Relevant Ethical Rules

"[T]o resolve questions of professional ethics, this Court turns to the New Jersey Rules of Professional Conduct ('RPC')." Montgomery Academy v. Kohn, 50 F. Supp. 2d 344, 349 (D.N.J.

4

1999) (citations omitted); L. Civ. R. 103.1(a). "In construing the RPC, a district court may look to the decisions of the New Jersey Supreme Court and other relevant authority." Essex Chem. Corp., 993 F. Supp. at 246. Although disqualification is not automatic, it is "ordinarily . . . the result of a finding that a disciplinary rule prohibits an attorney's appearance in a case." Miller, 624 F.2d at 1201.

Two rules are particularly relevant here. First, New Jersey Rule of Professional Conduct 1.9(a) identifies duties to former clients:

> A lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client gives informed consent confirmed in writing.

This rule disqualifies an attorney where there was (1) a past attorney-client relationship; (2) the current case involves the same matter or one substantially related to the prior representation; and (3) the interests of the current client are materially adverse to the interests of the past client. See, e.g., Carreno v. City of Newark, 834 F. Supp. 2d 217, 224-25 (D.N.J. 2011).

Second, New Jersey Rule of Professional Conduct 1.10(c) imputes conflicts of interest to a firm where a lawyer conflicted under Rule 1.9 is "associated with" that firm:

> When a lawyer becomes associated with a firm, no lawyer associated in the firm shall knowingly represent a person in a matter in which that lawyer is disqualified under RPC 1.9 unless:
> (1) the matter does not involve a proceeding in which the personally disqualified lawyer had primary responsibility;
> (2) the personally disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and
> (3) written notice is promptly given to any affected former client to enable it to ascertain compliance with the provisions of this Rule.

**III. ANALYSIS**

The parties do not dispute Magistrate Judge Mannion's holding that Ms. Hasan is conflicted from representing Boston Scientific under Rule 1.9. The first issue is therefore whether Rule 1.10 imputes this conflict to Blank Rome.

### A. Rita Hasan is "Associated With" Blank Rome

Boston Scientific argues that Ms. Hasan had a continuing relationship with Blank Rome, so her conflicts under Rule 1.9 should be imputed to the firm. Blank Rome replies that the appropriate test is the functional analysis endorsed in New Jersey Advisory Committee on Professional Ethics ("ACPE") Opinion 632, which Magistrate Judge Mannion appropriately applied to find that Ms. Hasan's conflict should not be imputed. Boston Scientific prevails.

In deciding that Ms. Hasan was not "associated with" Blank Rome, the magistrate judge relied upon a functional analysis which essentially asks whether a temporary lawyer has access to the other firm clients' confidential information. N.J. ACPE Op. 632 (Oct. 12, 1989) (reviewing whether "the temporary lawyer has access to information of firm clients other than the client on whose matter the lawyer is working and the consequent risk of improper disclosure or misuse of information relating to the representation of other firm clients of the firm"); see also ABA Formal Ethics Op. 88-356 (Dec. 16, 1988). If the temporary lawyer has access, a conflict is imputed. This functional analysis applies when determining "whether a temporary lawyer is associated with a firm . . . ." N.J. ACPE Op. 632; ABA Formal Ethics Op. 88-356 (entitled "TEMPORARY LAWYERS").

There are two relevant categories of lawyers: temporary and non-temporary. An essential preliminary question must therefore be asked: is the lawyer temporary? The magistrate judge did not ask this question. The Court does so now, and finds that Ms. Hasan is not a temporary attorney.

6

Blank Rome repeatedly held out Ms. Hasan as a lawyer with a general and continuing relationship with the firm; it cannot now avoid that implication for conflicts purposes.

Notably, the New Jersey Supreme Court has not ruled on when to consider an attorney to be temporary or non-temporary. The Court therefore reviews persuasive court decisions and ethics opinions. One consistent principle emerges; a firm cannot hold out a lawyer as one of its own and then later hide behind a functional analysis of that lawyer's duties to avoid ethical conflicts. Where a firm holds out an attorney as having a general and continuing relationship with it, that attorney is "associated with" the firm. See ABA Formal Ethics Op. 88-356, at 2 (lawyers who present themselves to the public in a way that suggests they are a firm are considered to be a firm for ethical purposes); D.C. Bar Ass'n Ethics Op. 352 (Feb. 2010) (advising that temporary attorneys may be associated with a law firm if the firm "create[s] the impression that the temporary contract lawyer has a continuing relationship with the firm"); Mustang Enters., Inc. v. Plug-In Storage Sys., Inc., 874 F. Supp. 881, 889 (N.D. Ill. 1995) supplemented, No. 94 C 6263, 1995 WL 55226 (N.D. Ill. Feb. 8, 1995) (a firm which has "chosen to obtain such benefits as it perceives to flow from that public listing [of two firms as a "We"] cannot complain that the 'We' . . . is treated as having the same meaning . . . . for conflict-of-interest purposes.").

Many ethics opinions bind firms by their public representations as to an attorney's title and status. This issue most frequently arises concerning "of counsel" designations. Generally, the firm's use of the "of counsel" title renders the lawyer associated with the firm. See ABA Formal Ethics Op. 90-357, at 4 (use of the title "of counsel" by a firm renders the "of counsel" lawyer "associated with" the firm); D.C. Bar Ass'n Ethics Op. 247 (May 1994) ("[A]n 'of counsel' designation gives a public impression of a sufficiently close relationship among lawyers that they should be treated as if they were the same firm for imputed disqualification analysis under Rule

1.10"); Va. Legal Ethics Op. No. 1866 at 3 (2012) ("Once the lawyer and the firm begin to hold the lawyer out as 'of counsel' to the firm, conflicts will be imputed between the two regardless of whether the lawyer actually has any information about the clients of the firm or vice versa."); Serrins & Assocs., 2014 WL 3928523, at *6 ("A lawyer is 'of counsel' if designated as having that relationship with a firm or when the relationship is regular and continuing . . . .") (quoting Staron v. Weinstein, 305 N.J. Super. 236, 241 (App. Div. 1997)); SpeeDee Oil Change Sys., Inc., 980 P.2d 371, 384 (Ca. 1999) ("designating an attorney as of counsel to a firm" inherently implies a "close, personal, continuous, and regular" relationship, and holding that one lawyer's "conflict of interest must be imputed to the . . . firm because of the public designation of their relationship."). The same principle has been applied to creating a firm; if lawyers "present themselves to the public in a way that suggests that they are a firm . . . they should be regarded as a firm for the purpose of the Rules." See ABA Comment, Rule 1.0; see also In re Sexson, 613 N.E.2d 841, 843 (Ind. 1993) (same). Consistent throughout these decisions is an emphasis on the firm's characterization rather than a functional analysis of the actual operations or access of the attorney in dispute.[1]

    Blank Rome argues that some of these cases and ethics opinions deal with misrepresentations under Rules 7.1 and 7.5, not disqualification under Rule 1.10. This distinction is unavailing, as many ethics opinions explicitly impute conflicts under Rule 1.10 between a firm and any lawyer the firm holds out as "of counsel." See ABA Formal Ethics Op. 90-357 at 4 (May 10, 1990) ("There can be no doubt that an of counsel lawyer . . . is 'associated in' and has an 'association with' the firm . . . to which the lawyer is of counsel, for purposes of . . . the general imputation of disqualification pursuant to Rule 1.10"); Va. Legal Ethics Op. No. 1866 (July 26,

---

[1] The Court does not preclude the possibility that a lawyer's actual status with the firm may rise to a general and continuing relationship with that firm without the firm making representations one way or the other. That issue is not before the Court, and is not decided here.

2012) (imputing conflicts under Rule 1.10 if "the lawyer and the firm begin to hold the lawyer out as 'of counsel' to the firm . . . regardless of whether the lawyer actually has any information about the clients of the firm or vice versa"); D.C. Bar Ass'n Op. 338 (Oct. 2006) (an "of counsel" lawyer will be "associated with" the firm under Rule 1.10). Moreover, the distinction is unsupported. Blank Rome provides no reason why a law firm and lawyer would be associated under Rules 7.1 and 7.5, but not under Rule 1.10 (or vice-versa).

Blank Rome also argues that it did not describe Ms. Hasan as "Of Counsel," but rather as an "Associate," so these decisions do not apply. The Court is not persuaded. The term "associate" conveys "a junior non-partner lawyer, regularly employed by the firm." ABA Formal Ethics Op. 90-357, at 1, 2, 4. It also conveys a continuing relationship, unless it is cabined by meaningful language. See id. at 2 n.4 (permitting "of counsel" designations where a lawyer has a "continuing relationship . . . other than as a partner or associate"). Moreover, the previously-cited decisions' reasoning cleanly applies; a firm's public characterizations may bind it. Here, Blank Rome publicly characterized Ms. Hasan as having a general and continuing relationship with the firm.

Blank Rome repeatedly held out Ms. Hasan as an associate of the firm, with no caveats or provisos concerning her secondment or transient status. She was listed as an "Associate" on the Blank Rome website. Felice Galant Letter Ex. 1, Dkt. No. 126-1. The listing recites that "Ritu Hasan is a member of the Consumer Finance Litigation group." Id. It also states that she "previously served as compliance counsel for the global compliance department at Boston Scientific Corporation." Id. These characterizations were not accidental. Blank Rome's Client insisted that Ms. Hasan be publicly marketed as a firm associate on the firm's website, and Blank Rome complied. Friend Dep. Tr. 65:8-18. Blank Rome benefited from this arrangement; the Client agreed to refer additional business to the firm. Nicholas Harbist Letter Ex. B, Dkt. No. 128-

2 (agreement between Blank Rome and Client, memorializing that Client will "work[] in good faith to identify opportunities for the firm to represent [it]"). Ms. Hasan was not only characterized as an associate on the Blank Rome website, however. The firm also reported Ms. Hasan as an associate to NALP, enhancing diversity numbers for marketing and recruiting purposes, Friend Dep. Tr. 134:3-17, and included Ms. Hasan's firm biography when pitching a potential client on additional work in the Consumer Finance Litigation. Friend Dep. Tr. 115:8-117:18.

The public esteem and trust in the integrity of the legal system remain important. Where a firm holds out an attorney as having a general and continuing relationship with it, that attorney is "associated with" the firm for conflicts purposes as well.[2] Blank Rome did not include any provisos or caveats to Ms. Hasan's associateship when it held her out as one of its lawyers. It cannot now conveniently eschew that relationship for the purposes of conflicts analysis. Ms. Hasan is associated with Blank Rome.

### B. Conflict Must Be Imputed To The Firm Under Rule 1.10(c)

Even where a lawyer is associated with a firm under Rule 1.10(c), conflicts will not be imputed to the firm if three requirements are each met: "(1) the matter does not involve a proceeding in which the personally disqualified lawyer had primary responsibility; (2) the

---

[2] The appearance of impropriety standard—where an attorney's creation of the appearance of a conflict alone was sufficient to constitute an ethical violation—has been removed from the New Jersey ethics rules. See In re Supreme Court Advisory Comm. on Prof'l Ethics Op. No. 697, 911 A.2d 51, 59 (N.J. 2006). The Court does not revive it. That standard was abandoned due to the fundamental unpredictability of "what an ordinary citizen acquainted with the facts might conclude." Admin. Determinations in Response to Report & Recommendation of Supreme Ct. of N.J. Comm'n on Rules of Prof. Conduct, at 19 (Sept. 10, 2003) ("Pollock Commission Report"), reprinted in N.J. Attorney Ethics 1134. The appearance of impropriety standard rendered ethical violations occasionally impossible to discern until after a court or ethical commission had ruled. Id. The Court is sensitive to those concerns. However, holding a firm to its public representations as to a lawyer's status, as the Court does here, does not raise concerns of unpredictability. It simply means that a firm cannot have it both ways. It cannot hold out an associate as its own for diversity and client recruitment purposes, while insisting there is no association for conflict purposes.

personally disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and (3) written notice is promptly given to any affected former client to enable it to ascertain compliance with the provisions of this Rule." Blank Rome did not comply with the three requirements to avoid imputation here.

First, it did not implement a written screen until substantially after Ms. Hasan's prior employment became known to Boston Scientific. Opp. to Defs.' Mot. to Disqualify Counsel Ex. 5, Dkt. No. 164-5; Friend Dep. Tr. at 136:15-138-13 (testifying that firm did not create written ethical screen until July 3, 2014). To be timely, screening should have been performed at the time of Ms. Hasan's hiring. See Mody v. Quiznos Franchise Co., 2012 WL 2912749, at *5 (N.J. Super. A.D. July 18, 2012). Blank Rome argues that there was a de facto screen because Ms. Hasan was almost never at the firm and did not communicate with firm attorneys about confidential information. For one, New Jersey Rules of Professional Conduct 1.0(l) and 1.10(f) explicitly require screening arrangements to include "written procedures" that contain the screened attorney's acknowledgement of the obligation to remain screened. See Martin v. AtlantiCare, No. 10-6793, 2011 WL 5080255, at *10 (D.N.J. Oct. 25, 2011) ("RPC 1.10(f) and 1.0(e) indicate in clear and unmistakable terms that to be adequate a screening procedure must be in writing."). The assertion that Ms. Hasan never communicated with firm attorneys about confidential information is also without basis. She appears to have had contact with firm attorneys at firm social events and elsewhere. Friend Dep. Tr. 129:11-130:1, 132:15-133:16. Without a written screen, there was no reason confidential information could not have been exchanged. Blank Rome's alleged de facto screen is not sufficient.

Second, Blank Rome did not provide prompt written notice to Boston Scientific to enable Boston Scientific to ascertain compliance with Rule 1.10(c). Instead, Boston Scientific discovered

the conflict for itself when an employee noticed a LinkedIn posting by Ms. Hasan where she described herself as a Blank Rome Associate. Friend Decl. ¶ 4, Dkt. No. 159-6.[3] Blank Rome argues that its disclosure was timely because Blank Rome immediately notified Boston Scientific once it discovered the potential conflict. But the only reason the conflict was discovered so late—by Boston Scientific rather than by Blank Rome—was because the firm did not conduct a conflict check. Friend Dep. Tr. 47:23-49:4. The exceptions to Rule 1.10(c) thus do not apply here.

### C. Disqualification of Blank Rome is Appropriate

Disqualification is not an automatic remedy. Miller, 624 F.2d at 1201. It is, however, appropriate here.

"[A] motion for disqualification calls for us to balance competing interests, weighing the need to maintain the highest standards of the profession against a client's right freely to choose his counsel." City of Atl. City v. Trupos, 992 A.2d 762, 771 (N.J. 2010) (quoting Dewey v. R.J. Reynolds Tobacco Co., 536 A.2d 243, 251 (N.J. 1988). A court "should disqualify an attorney only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule." Miller, 624 F.2d at 1201.

This matter involves a proceeding in which Ms. Hasan had direct involvement on one side, see Tr. 29:8-24, and now is "associated with" the firm representing the other side. Such "side-switching" strongly counsels disqualification. See United States v. Pelle, No. 05-407, 2007 WL 674723, at *4 (D.N.J. Feb. 28, 2007) ("We cannot conceive of any situation in which the side-switching attorney or his new firm would be permitted to continue representation if, unlike the

---

[3] This matter also appears to involve a proceeding in which Ms. Hasan had primary responsibility. Privilege logs frequently list Ms. Hasan as a participant in privileged communications concerning Plaintiffs. Dkt. No. 159-6, Schubert Decl. ¶ 9. Plaintiffs have offered to provide additional information in camera for ex parte review, but such review is not necessary here, as two other Rule 1.10(c) requirements are separately not met.

situation before us, the attorney had in fact actually represented the former client or had acquired confidential information concerning that client's affairs."); see also ABA, Formal Ethics Op. 88-356, at 4.

The rationale for disqualification here is compelling. Boston Scientific has presented obvious indicia of unfairness, such as the inclusion of their former attorney, Ms. Hasan, on several portions of the privilege log. Blank Rome failed to impose a timely screen or otherwise prevent communication between Ms. Hasan and the attorneys working on this matter. Ms. Hasan submitted her resume to the firm, listing her prior experience at Boston Scientific. That resume was provided to the individual at Blank Rome responsible for running conflict checks. Ambrosio Decl. ¶ 22, Dkt. No. 159-19; Friend Dep. Tr. 54:16-56:14, 58:24-59:13. No conflict check was run, in violation of the firm's conflicts policy requiring all attorneys employed by the firm to undergo a conflicts check. Friend Dep. Tr. 47:23-49:4. No screen was erected and no notice was given until after Boston Scientific discovered that its prior attorney was now employed by the firm suing it. This, even though Ms. Hasan's prior representation of Boston Scientific was listed on her profile on the Blank Rome website. Boston Scientific has cause to be concerned.

Plaintiffs' right to freely choose its counsel is not substantially harmed by disqualifying Blank Rome here. Plaintiffs have already had three separate counsel. The stage of this case is not particularly advanced, as this motion also comes long before trial and the parties have not yet begun expert discovery or summary judgment briefing. And more generally, "there is no right to demand to be represented by an attorney disqualified because of an ethical requirement." Dewey, 536 A.2d at 251. Weighing Plaintiff's right to choose its counsel with the need to maintain the highest standards of client confidentiality and attorney ethics, the Court finds that disqualification is appropriate here.

## IV. CONCLUSION

Boston Scientific's Appeal of the Magistrate Judge's Order Denying the Motion to Disqualify is hereby **GRANTED**. Blank Rome is disqualified from representation in this case due to imputed conflict under Rule 1.10.

Date: November 30, 2015                     */s/ Madeline Cox Arleo*
                                            **Hon. Madeline Cox Arleo**
                                            **UNITED STATES DISTRICT JUDGE**