UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA, *ex rel.*
WENDY A. BAHNSEN *et al.*,

    *Plaintiffs*,

v.

BOSTON SCEINTIFIC
NEUORMODULATION CORPORATION,

    *Defendant*.

Civil Action No. 11-1210

**OPINION**

**John Michael Vazquez, U.S.D.J.**

    This matter comes before the Court on a Motion for Summary Judgment filed by Plaintiffs Wendy Bahnsen and Carolina Fuentes (collectively "Plaintiffs").[1] D.E. 296. Defendant Boston Scientific Neuromodulation Corporation ("BSNC" or "Defendant") filed a brief in opposition, D.E. 309, to which Plaintiff replied. D.E. 336.[2] The Court reviewed the submissions made in support and in opposition of the motion and considered the motion without oral argument pursuant

---

[1] Plaintiffs also moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). A Rule 12(c) motion does not appear appropriate here. "Under Rule 12(c), judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Bayer Chemicals Corp. v. Albermale Corp.*, 171 Fed. Appx. 392, 397 (3d Cir. 2006) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988) (internal citations and quotations omitted)). Because resolving this motion required the Court to look beyond the pleadings, the Court will resolve Plaintiffs' motion as a motion for summary judgment.

[2] In this Opinion, Plaintiffs' motion for summary judgment (D.E. 296) will be referred to as "Pl. MSJ." Defendant's brief in opposition (D.E. 309) will be referred to as "Def. Opp." Plaintiffs' reply brief (D.E. 336) will be referred to as "Pl. Rep."

to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons that follow, Plaintiffs' motion for summary judgment is **GRANTED** in part and **DENIED** in part.[3]

I. FACTS AND PROCEDURAL HISTORY

A. Factual Background[4]

Defendant BSNC is a wholly owned subsidiary of Boston Scientific Corporation. Plaintiffs' Amended Complaint ("Am. Compl.") ¶ 16; D.E. 19. During the relevant time period, BSNC "marketed, sold, supplied and submitted claims for a range of medical devices and related equipment, including the Precision Plus™ SCS[Spinal Cord Simulation] System." *Id.* As a government supplier of medical equipment, BSNC was responsible for responding to requests to replace external equipment. Its Billing and Collections Department was responsible for processing the necessary documentation. *Id.* ¶ 27.

BSNC employed Plaintiff Bahnsen in its Valencia, California office from March 2008 through October 2009. Plaintiffs' Statement of Material Facts Not In Dispute ("PSOMF") ¶ 1; D.E. 296-2. From March 2008 through January 2009, Ms. Bahnsen worked in BSNC's Customer Service Department. Am. Compl. ¶ 8. In January 2009, BSNC transferred Ms. Bahnsen to its Billings and Collections Department to work as a Reimbursement and Claims Management Specialist. *Id.*

In March 2009, Ms. Bahnsen entered into an "Agreement Concerning Employment for U.S. Employees" ("Bahnsen Agreement") with Boston Scientific Corporation. PSOMF ¶ 3.

---

[3] Defendant has also filed a motion for summary judgment as to Plaintiffs' claim. Similarly, Plaintiffs and Defendant have filed *Daubert* motions as to the proposed expert witnesses in this case. Those motions are addressed in separate opinions and orders.

[4] The facts herein come from the evidence in the record. The Opinion cites to Plaintiffs' Statement of Material Facts Not In Dispute unless the parties disagree about the fact(s) or supplemental information is necessary.

2

Massachusetts law governs the contract. Def. Opp. at 8. The agreement contains a clause whereby Ms. Bahnsen promised that if BSNC terminated her employment, she would "immediately deliver to Boston Scientific all property owned by Boston Scientific, and all documents and materials of any nature containing any Proprietary Information, without retaining any copies." Defendant's Counterclaims ("Def. CC.") ¶ 10; D.E. 84. The agreement also has a "Remedies for Breach" provision that states, "[a]ny breach of this Agreement is likely to cause Boston Scientific substantial and irrevocable damage[.]" *Id.* ¶ 12. BSNC terminated Ms. Bahnsen's employment on October 15, 2009. *Id.* ¶ 14.

BSNC employed Plaintiff Fuentes in its Valencia office from May 2005 through June 2010. PSOMF ¶ 2. From her hiring through March 2008, Ms. Fuentes worked as the Administrative Assistant to BSNC's Vice President of Health Economics and Reimbursement. Am. Compl. ¶ 13. In February 2009, after Ms. Fuentes returned to work from medical leave, BSNC transferred her to its Billing and Collection Department. Defendant's Supplemental Statement of Material Facts Not In Dispute ("DSSOMF") ¶ 1; D.E. 309-1.

In August 2005, Ms. Fuentes entered into an "Employee Invention and Confidential Information Agreement Policy Letter 2" ("Fuentes Agreement") with Advanced Bionics (a predecessor to BSNC). PSOMF ¶¶ 2, 4, 7. California law governs the Fuentes Agreement. Def. Opp. at 8. The agreement includes a clause requiring Ms. Fuentes "during the term of [her] employment and thereafter, [to] keep confidential and refrain from using or disclosing to others all confidential information . . . which Employee develops or learns about during the course of [her] employment." Def. CC. ¶ 7. BSNC terminated Ms. Fuentes' employment on October 15, 2009. *Id.* ¶ 13.

In early 2008, Ms. Fuentes copied the contents of her work laptop onto a thumb drive. At the time, Ms. Fuentes position was an Administrative Assistant. The parties dispute why Ms. Fuentes took this action. Plaintiffs claim that Ms. Fuentes acted from concern that "her supervisor was out to get her, and [because she] wanted to protect herself against retaliation." PSOMF ¶ 7. Defendant claims Ms. Fuentes acted "to defend her work performance as an Administrative Assistant." DSSOMF ¶ 7(a).

Over the course of their employment in BSNC's Billing and Collections Department, Plaintiffs allege that they became aware of BSNC's illegal billing practices. Pl. MSJ at 2. This led Plaintiffs to speak with Dr. Joseph Piacentile,[5] a former False Claims Act[6] ("FCA") whistleblower and whistleblower consultant, at some time between September and October 2009. Dr. Piacentile advised Plaintiffs to obtain copies of documents that evidenced BSNC's illegal billing practices. PSOMF ¶ 8; DSSOMF ¶ 16. Plaintiffs then consulted attorneys about bringing a False Claims Act ("FCA") suit against BSNC for its illegal billing practices. PSOMF ¶ 10. Thereafter, Plaintiffs took "from BSNC's offices copies of CMS-1500 forms, reports from the Zirmed system, and medical documentation like written orders from physicians, pertaining to claims that had already been submitted to Medicare." PSOMF ¶ 9.

In March 2011, Plaintiffs filed a *qui tam* Complaint alleging that BSNC submitted false claims to the Government in violation of the FCA, 31 U.S.C. § 3729 *et. seq.* Def. CC. ¶ 16. Plaintiffs then filed an Amended Complaint in September 2012. D.E. 19. Plaintiffs allege that Defendant became aware that they had removed BSNC documents years before they filed their

---

[5] Defendants indicate that Dr. Piacentile was previously convicted of health care fraud.

[6] 31 U.S.C. § 3729 *et seq.*

suit. PSOMF ¶ 11. Defendant, however, claims that although in October 2009 Ms. Bahnsen's husband told BSNC that Ms. Bahnsen "had stolen company documents," BSNC "did not have actual knowledge of the misappropriation until it received the Amended Complaint." DSSOMF ¶ 11(a). Defendant claims that one week after receiving the Amended Complaint it hired the law firm of Norton Rose Fulbright US LLP ("Norton Rose")[7] to investigate BSNC's potential regulatory exposure from Plaintiffs' actions and suggest mitigation tactics. BSNC paid Norton Rose $30,834 for this work. DSSOMF ¶¶ 19-20.

In December 2013, after Plaintiff began producing the copied documents to BSNC, Defendant also hired a forensic investigative firm, Computer Forensic Services, Inc. ("CSF"). *Id.* ¶¶ 23-25. BSNC asked CSF to determine what documents and information Plaintiff might have taken from BSNC. Defendant paid CSF $37,381.25 for its services. *Id.* ¶¶ 25-26.

In January 2014, Defendant filed amended counterclaims against Plaintiffs. In its counterclaims, Defendant alleges that Plaintiffs' copying and sharing of BSNC documents breached the terms of both their agreements with BSNC. Def CC. ¶¶ 25-34; PSOMF ¶¶ 3-4.

### B. Procedural Background

Plaintiffs filed the aforementioned Complaint and Amended Complaint. In response, Defendant filed motions to strike, to dismiss the Amended Complaint, and to disqualify Plaintiffs' counsel. D.E. 28-30. Of note, Defendant moved to strike "Confidential and Protected Information" from the Amended Complaint, alleging that Plaintiffs' use of BSNC's information violated the Health Insurance Portability and Affordability Act ("HIPPA"). D.E. 28. Judge

---

[7] Norton Rose is also Defendant's litigation counsel in this matter. Plaintiffs have not raised an issue concerning the fact that Norton Rose attorneys are potential witnesses in this case, in their mitigation counsel role, and that Norton Rose is also litigation counsel. The Court declines to do so *sua sponte*.

5

Wigenton denied all three of Defendant's motions, including Defendant's motion concerning HIPPA information. D.E. 49.

On June 28, 2013 Defendant filed an Answer to the Amended Complaint and raised counterclaims against Plaintiffs. D.E. 54. On January 23, 2014, Defendant amended its counterclaims. D.E. 84. In response, Plaintiffs moved to dismiss the amended counterclaims. D.E. 85. Judge Wigenton denied Plaintiffs' motion. D.E. 132.

On December 22, 2014 the case was reassigned from Judge Wigenton to Judge Arleo. D.E. 149. Then, on March 1, 2016, the case was again reassigned from Judge Arleo to the undersigned. D.E. 226. The Court thereafter granted the parties' stipulated voluntary partial dismissal. D.E. 293. Plaintiffs moved for summary judgment on January 27, 2017. D.E. 296. Defendant filed a brief in opposition, D.E. 309, to which Plaintiff replied. D.E. 336.

## II. SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the

evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

### III. ANALYSIS[8]

Defendant alleges two counterclaims: a breach of contract claim against Ms. Bahnsen, and a breach of contract claim against Ms. Fuentes. Def. CC. ¶¶ 25-34. Massachusetts law

---

[8] Defendant's counterclaims were brought pursuant to the Court's supplemental jurisdiction. 28 U.S.C. § 1367. The counterclaims are sufficiently related to the federal law claims set forth in Plaintiffs' Amended Complaint that they form part of the same case or controversy. *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 308 (3d Cir. 2003), *as amended* (Nov. 14, 2003).

7

governs the Bahnsen Agreement, and California law governs the Fuentes Agreement. In Massachusetts, a party has a cause of action for a breach of contract when (1) an agreement existed, (2) the agreement was supported by consideration, (3) one party was ready and willing to perform, (3) the other party breached, (4) the nonbreaching party suffered harm as a result. *Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 690 (2016). Similarly, in California a breach of contract claim is comprised of the following elements: (1) a contract existed, (2) a party performed or was excused from performing, (3) the other party breached, (4) damages resulted to the nonbreaching party. *See Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

### A. Breach of Contract & the False Claim Act's Public Policy Exception

Here, Plaintiffs do not dispute Defendant's contention that they breached the terms of their respective employment agreements when they copied and took BSNC documents. Instead, Plaintiffs argue that FCA public policy excuses any breach. Relying on this exception, Plaintiffs argue that they are entitled to summary judgment on Defendant's counterclaims.

The FCA provides penalties for persons who knowingly submit fraudulent claims to the Government. *U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1152 (3d Cir. 1991). Private plaintiffs may bring a *qui tam* action on behalf of the government to recover losses that the government incurred from defendant's knowing submission of fraudulent claims. *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 182 (3d Cir. 2001) (citing 31 U.S.C. § 3730(b)(1)). Courts have recognized the public importance of private persons bringing *qui tam* actions. *See United States v. Cancer Treatment Centers of Am.*, 350 F. Supp. 2d 765, 769-70 (N.D. Ill. 2004) ("From targeting massive contractor fraud during the Civil War to halting healthcare fraud today, the ability of individuals to serve as private attorneys general and to protect the interests of the government has and continues to serve vital

purposes."). To that end, breaches of contract flowing from plaintiffs' efforts to bring FCA actions have been excused on public policy grounds. *U.S. ex rel. Head v. Kane Co.*, 668 F. Supp. 2d 146, 152 (D.D.C. 2009) (voiding the defendant's counterclaim against the *qui tam* plaintiff because public policy concerns of not impeding the FCA action outweighed breach of contract concerns); *see Cancer Treatment Centers of Am.*, 350 F. Supp. at 773 (finding that plaintiff and the government were "correct" that "the confidentiality agreement cannot trump the FCA's strong policy of protecting whistleblowers who report fraud against the government").

Here, both Ms. Bahnsen and Ms. Fuentes argue that public policy considerations excuse any breach resulting from their taking BSNC documents. Pl. MSJ at 12. The parties discuss two separate occurrences of Plaintiffs removing documents. The Court will address each occurrence separately.

### 1. Ms. Fuentes' Copying of Her Work Laptop in 2008

A genuine dispute of material fact exists as to whether Ms. Fuentes' copying of her work laptop in 2008 makes her liable for breach of contract. In February 2008, Ms. Fuentes copied the contents of her work laptop onto a USB drive. Pl. MSJ, Ex. F (Fuentes Dep. 55:3-56:14). Ms. Fuentes explained that she made the copy "because when I came back from medical leave, I was placed in a new position, and I just had a feeling that something was going to happen, and I needed to be able to prove my work." *Id.* (Fuentes Dep. 57:4-8). BSNC argues that the FCA public policy exception is inapplicable because Ms. Fuentes acted out of concern for job protection, not to bring a FCA claim. Def. Opp. at 3. BSNC points out that in 2008, Ms. Fuentes had not yet started work in BSNC's Billing and Collections Department. *Id.* Therefore, BSNC argues that at the time Ms. Fuentes copied her laptop's contents, she could not have acted

for the purpose of bringing a FCA claim since she was not yet aware of BSNC's billing practices. *Id.*

Plaintiffs do not directly address Defendant's arguments. Instead, Plaintiffs argue that the language of the Fuentes Agreement did not require Ms. Fuentes to turn over confidential information to BSNC upon termination. Plaintiffs assert that the Fuentes agreement only prohibited Ms. Fuentes from using or disclosing such information. Thus, they claim Ms. Fuentes' actions are covered by the FCA since Ms. Fuentes later "only 'used' or 'disclosed' that information in connection with pursuing a case against BSNC for violations of the FCA." Pl. MSJ at 3.

The Court is persuaded that Defendant has raised a genuine dispute of material fact as to whether Ms. Fuentes' copying of the contents of her work laptop in 2008 breached her employment agreement. Defendants correctly note that at the time she copied the information, Plaintiff did not do so for purposes of bringing a FCA action. Ms. Fuentes was not yet assigned to the Billing and Collections Department or aware of the alleged improper billing. Plaintiffs are, therefore, not entitled to summary judgment as to the 2008 alleged breach by Ms. Fuentes.[9]

2. <u>Ms. Bahnsen's and Ms. Fuentes' Copying of BSNC Documents in 2009</u>

A genuine dispute of material fact does not exist as to the breach of contract claims concerning Ms. Bahnsen and Ms. Fuentes' copying of BSNC documents in 2009. Indeed, Defendant scarcely addresses the issue. Instead, Defendant focuses on Ms. Fuentes' copying of

---

[9] As to the 2008 computer documents, Defendant tries to loop Ms. Bahnsen in as well. In support, Defendant claims that Ms. Bahnsen later possessed the documents while working in conjunction with Ms. Fuentes. However, Defendant provides no analysis to support its argument. For example, Defendant provides no factual information that Ms. Bahnsen was aware of, much less involved in, Ms. Fuentes' taking of documents. Thus, as to the 2008 computer documents, there is no genuine issue of material fact that precludes summary judgment in favor of Ms. Bahnsen.

10

the contents of her work laptop in 2008. Defendant provides a limited response to Plaintiffs' argument that public policy excuses any breach resulting from their 2009 actions. Defendant generally asserts that "Relator's violations plainly exceeded those [FCA protection] requirements because they indiscriminately took irrelevant, confidential documents for other purposes besides developing an FCA case." Def. Opp. at 3. Yet Defendant does not offer evidence to support its assertion.

Plaintiffs argue that in 2009 they "removed from BSNC's office copies of materials needed to prove BSNC violated the False Claims Act." Pl. MSJ at 3. Further, Plaintiffs allege that they did not remove these documents until after consulting with attorneys and a former False Claims Act whistleblower. *Id.* After those consultations, Plaintiffs followed the advice given and "only took information on claims that had already been submitted to Medicare." *Id.* at 4. Defendant does not allege facts to create a genuine dispute that documents taken in 2009 were intended or used for any other purpose than to bring a FCA claim against BSNC. Plaintiffs are, therefore, entitled to summary judgment as to the 2009 alleged breach pursuant to the FCA's public policy considerations.

### B. Contract Damages: Nominal and Damages

Defendant seeks both nominal and actual damages for the contract breaches it alleges against Plaintiffs in its counterclaims. As noted, only Defendant's counterclaim against Ms. Fuentes for her alleged breach based on the 2008 computer documents survives. Plaintiffs argue that Defendant's counterclaims "also fail as a matter of law because BSNC has not produced evidence sufficient to prove damages." Pl. MSJ at 16. Defendant disagrees, claiming that since it is entitled to nominal damages, the Court need not address whether BSNC suffered actual

damages. Alternatively, Defendant argues that it has alleged sufficient material facts to create a genuine dispute over actual damages. Def. Opp. at 20-21.

### 1. Nominal Damages

A genuine dispute of material fact exists as to whether Defendant is entitled to nominal damages for Ms. Fuentes' copying of her work laptop's contents in 2008. California law regarding nominal damages for a breach of contract is unsettled. Some California courts have held that "[e]ven where no actual damages can be established, a plaintiff who has established that a contract was breached is entitled to an award of nominal damages as the breach itself is a 'legal wrong that is fully distinct from the actual damages.'" *ProMex, LLC v. Hernandez*, 781 F. Supp. 2d 1013, 1019 (C.D. Cal. 2011) (quoting *Sweet v. Johnson,* 169 Cal. App. 2d 630, 632 (1959)). However, other California courts have held that a claim for breach of contract fails if the alleged wronged party does not put forward evidence of damages. *Navellier v. Sletten*, 106 Cal. App. 4th 763, 775 (2003) (holding that plaintiffs' claims could not survive the motion to dismiss because "[d]amages are, of course, a necessary element of the breach of contract cause of action and proof of that element is wholly lacking"). Although the California courts have not taken a consistent position on nominal damages, since there is authority for allowing nominal damages for a breach of contract, the Court will allow this claim to go forward. *See* Cal. Civ. Code § 3360 ("When a breach of duty has caused no appreciable detriment to the party affected, he may yet recover nominal damages."). Plaintiffs are, therefore, not entitled to summary judgment on Defendant's claim of nominal damages for Ms. Fuente's alleged breach in 2008.

### 2. Actual Damages

Plaintiffs are, however, entitled to summary judgement on Defendant's claim of actual damages. Defendant failed to provide required proof of such damages within the discovery timeline. Therefore, Defendant is foreclosed from seeking actual damages.

Federal Rule of Civil Procedure 37 provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." The parties agree that the fact discovery deadline for the matter was April 29, 2016. Def. Opp., Ex. 2 ¶ 24. Defendant did not submit evidence regarding damages until September 2016, five months later, in conjunction with expert discovery. *Id.* ¶ 25.

Defendant has not provided any evidence that substantially justifies its late production. Instead, Defendant argues that Plaintiffs were not harmed by the tardy disclosure because they had an opportunity to depose Defendant's corporate representative pursuant to Federal Rule of Civil Procedure 30(b)(6). Defendant asserts that its witness, Mr. O'Neil, "testified that the company *would be* claiming mitigation damages relating to an internal investigation of Relators' actions and that the Company *would be offering* evidence of its damages in expert discovery." Def. Opp. at 22, fn. 11 (emphases added). Defendant also claims that late production of its mitigation expenses did not harm Plaintiffs since "BSNC's corporate witness had previously testified as to the approximate amount of such expenses." *Id.*

The Court disagrees. Mr. O'Neil was BSNC's Rule 30(b)(6) witness. As such, Defendant designated Mr. O'Neil to be BSNC's voice. Mr. O'Neil had to "testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). Mr. O'Neil failed to do so. The following deposition testimony is illustrative:

> Q. Did Boston Scientific determine that it would have any HIPAA exposure as a result of documents taken from the company by Ms. Fuentes or Ms. Bahnsen?
>
> A. I think at the end of that investigation there was not a concern for HIPAA exposure based on what feel[sic] at the time we thought they took, but there a lot of time and money spent into that investigation.
>
> Q. How much time and how much money?
>
> A. From -- from my conversations with counsel, and I think we'll provide experts to -- to talk about that , but upwards of $50,000.
>
> Q. When was that investigation conducted?
>
> A. *I don't have specifics of it.*
>
> Q. Was it in the year 2009?
>
> A. *I don't have specifics of it.*

Pl. MSJ, Ex. H. (O'Neil Dep. 66:14-67:5 (emphases added)).

First, at the time of the Rule 30(b)(6) deposition, Defendant had not produced its documents relating to its claimed damages. Second, the witness was clearly in no position to provide substantive testimony as to Defendant's claimed damages. Further, after Plaintiff did receive the relevant documents, it requested another deposition of the Rule 30(b)(6) witness. Defendant refused. Pl. MSJ, Ex. M. Thus, Plaintiffs were plainly harmed by their inability to obtain critical fact discovery of Defendant's alleged damages.

The Court also has concerns as to whether Defendant's alleged mitigation expenses were reasonable. A party who suffers damages from a breach of contract has a duty to reasonably mitigate those damages. *Agam v. Gavra*, 236 Cal. App. 4th 91, 111 (2015). The party will not be able to recover damages for losses that were unreasonable and could have been avoided. *Valle de Oro Bank v. Gamboa*, 26 Cal. App. 4th 1686, 1691 (1994). It is the breaching party's

burden to show that the nonbreaching party's mitigation damages were unreasonable. *Agam*, 236 Cal. App. 4th at 111 (citation omitted).[10]

Here, Defendant claims mitigation damages for money it expended on hiring Norton Rose to investigate BSNC's potential regulatory exposure and to advise BSNC on mitigation tactics. DSSOMF ¶ 19. Defendant also seeks mitigation damages for money it expended to hire CSF to determine what documents and information Plaintiff might have taken from BSNC. *Id.* ¶ 25. Defendant paid Norton Rose $30,834 and CSF $37,381.25. *Id.* ¶¶ 20, 26.

Defendant's expenditures to mitigate HIPPA regulatory concerns give the Court pause as to their reasonableness. Judge Wigenton had already ruled that HIPPA concerns raised in Defendant's motion to dismiss were not relevant to this case. Pl. MSJ at 21; D.E. 49 at 15. Further the money Defendant paid CSF also appears questionable because Defendant presents no plausible explanation as to why it was necessary. Defendant states that "it was under no obligation to take Relators' word regarding their unlawful actions and had reason to doubt their credibility in that regard." Def. Opp. at 27, fn. 14. Yet, Defendant presents no evidence demonstrating that it had a reasonable concern as to the accuracy and completeness of Plaintiffs' document production.

---

[10] Plaintiffs did not provide the Court with relevant law on this issue. Plaintiffs instead cited to Massachusetts law as to a non-breaching party bearing the burden to prove that its mitigation expenses were reasonable. Pl. MSJ at 19. They presumably did so because the Bahnsen Agreement is governed by Massachusetts law. Plaintiffs then cited to a Ninth Circuit case for the same proposition, *Reynolds Metals Co. v. Lampert*, 316 F.2d 272, 273, *on reh'g*, 324 F.2d 465 (9th Cir. 1963). Plaintiff presumably did so because the Fuentes Agreement is governed by California law. However, *Reynolds Metals Co.* is inapposite because it applies Oregon law. California law provides that it is the breaching party's burden to show that the other party's mitigation expenses were unreasonable. *Agam*, 236 Cal. App. 4th at 111.

Yet, the Court's decision does not rest on the reasonableness of Defendant's alleged mitigation expenses. Instead, and as noted, Defendant failed to turn over underlying information on these claimed mitigation expenses during fact discovery. Federal Rule of Civil Procedure 37 required it to do so. Further, Plaintiffs were prejudiced by Defendant's discovery violations because they "did not have the opportunity to depose *anyone* with actual knowledge of the alleged investigation conducted or the expenses allegedly incurred so as to test their veracity or reasonableness." Pl. Rep. at 10 (emphasis in original). Thus, because Plaintiffs could not evaluate the reasonableness of the Defendant's alleged mitigation expenses during fact discovery, Rule 37 dictates that the Court cannot do so now. The Court may not consider this evidence in ruling on this motion. Fed. R. Civ. P. 37. As a result, Defendant has presented insufficient information reflecting why there is a genuine issue of material fact to preclude summary judgment in Plaintiffs' favor as to actual damages.

### IV. CONLCUSION

For the reasons stated above, Plaintiffs' motion for summary judgment (D.E. 296) is **GRANTED** in part and **DENIED** in part. Plaintiff's motion is granted except that Defendant's counterclaim for breach of contract against Ms. Fuentes relating to her copying of the contents of her BSNC laptop in 2008. Defendant is limited to seeking nominal damages for this alleged breach. An appropriate Order accompanies this Opinion.

Dated: December 15, 2017

　　　　　　　　　　　　　　　　　　　　*[signature]*
　　　　　　　　　　　　　　　　　　　　John Michael Vazquez, U.S.D.J.