# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* WENDY A. BAHNSEN, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>BOSTON SCIENTIFIC NEUROMODULATION CORPORATION,<br><br>*Defendant*. | Civil Action No. 11-1210<br><br>**OPINION & ORDER** |

**John Michael Vazquez, U.S.D.J.**

Currently pending before before the Court, in this False Claims Act case, is a motion *in limine* filed by Defendant Boston Scientific Neuromodulation Corporation ("BSNC" or "Defendant"), which seeks to exclude certain evidence regarding claims data. D.E. 420. Plaintiffs Wendy Bahnsen and Caroline Fuentes (collectively "Plaintiffs") filed a brief in opposition (D.E. 421), to which Defendant replied (D.E. 422).[1] The Court reviewed the submissions made in support and in opposition, and considered this motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons that follow, Defendant's motion is **GRANTED** in part and **DENIED** in part.

## INTRODUCTION

BSNC seeks to exclude certain evidence, such as individual line entries, unprocessable entries, adjusted line entries, voided line entries, and duplicate submissions. BSNC argues that the

---

[1] In this opinion, BSNC's brief in support of its motion will be referred to as "BSNC's Br."; Plaintiffs' brief in opposition will be referred to as "Plfs' Opp."; and BSNC's reply brief will be referred to as "BSNC's Reply".

information does not qualify as "claims" under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et al*. The information is apparently derived from spreadsheets that were produced in discovery by a third-party Medicare Administrative Coordinator ("MAC"). Plaintiffs respond that the motion is not appropriate because it addresses an issue that should have been resolved by summary judgment. Alternately, Plaintiff argues that all entries on the spreadsheet are in fact claims under the FCA, or at a minimum, that a jury should decide whether the relevant entries qualify as claims.

At the outset, the Court does not understand Plaintiffs' argument concerning summary judgment because the Court expressly permitted BSNC to raise this issue by way of a motion *in limine* rather than deciding it at the summary judgment stage. D.E. 388 at 30. Consequently, Defendant's motion is proper. However, there is additional information that the Court needs in order to definitively rule on the motion at hand. In the Court's view, both parties to some extent advocate for a definition of claim that is not consistent with the FCA. As a result, the Court will review the relevant law as to what constitutes a claim for FCA purposes before turning to the parties' arguments. In addition, the Court will rule on the motion to the extent possible, given the information that is currently available to the Court.

## "CLAIM" UNDER THE FCA

The FCA provides, in relevant part, as follows:

[A]ny person who—

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
>
> . . .
>
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, . . . plus 3 times the amount of damages which the Government sustains because of the act of that person.

2

31 U.S.C. § 3729(a). Thus, a violation occurs when a claim is "present[ed]." *Id.* In addition, only claims that "cause or would cause economic loss to the government" are subject to the FCA. *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 179 (3d Cir. 2001). Accordingly, attempts are also subject to FCA liability. *Id.* at 184 (stating that the FCA "seeks to redress fraudulent activity which attempts to or actually causes economic loss to the United States government").

The FCA imposes two types of financial liability. First, a submitter of a "false or fraudulent claim" (or false record/statement vis-à-vis such a claim) is liable for a civil monetary penalty between $5,000 to $10,000 per claim. 31 U.S.C. § 3729(a); *United States v. Bornstein*, 423 U.S. 303, 313 (1976). This penalty will be imposed for false claims that are actually paid by the government, in addition to attempted false claims. *United States ex rel. Schwedt v. Planning Research Corp.*, 59 F.3d 196, 199 (D.C. Cir. 1995) ("[E]ven if the claim is rejected, its very submission is a basis for liability."). Second, the submitter of the claim is also liable for actual damages, which are trebled under the FCA. 31 U.S.C. § 3729(a)(1)(G); *see also United States v. Anchor Mortg. Corp.*, 711 F.3d 745, 748 (7th Cir. 2013) (stating that the "statute requires treble damages").

The FCA further defines "claim":

(2) the term "claim"—

> (A) means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that—
>
>> (i) is presented to an officer, employee, or agent of the United States; or
>>
>> (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government--

3

> > (I) provides or has provided any portion of the money or property requested or demanded; or
>
> > (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded; and
>
> (B) does not include requests or demands for money or property that the Government has paid to an individual as compensation for Federal employment or as an income subsidy with no restrictions on that individual's use of the money or property[.]

31 U.S.C. § 3729(b).

In *United States v. Bornstein*, 423 U.S. 303 (1976), the Supreme Court of the United States set forth the parameters of a claim under the FCA.[2] In *Bornstein*, Model Engineering & Manufacturing Corporation ("Model") had a contract with the United States to provide radio kits. United National Labs ("United"), Model's subcontractor, sent twenty-one boxes of misbranded tubes to Model in three separately invoiced shipments. Model then used 397 of the misbranded tubes in radio kits that it provided to the United States, and sent thirty-five invoices to the Government for the kits. Each invoice included claims for payment for the misbranded tubes that had been supplied to Model by United. *Bornstein*, 423 U.S. at 307. After the Government discovered the fraud, it brought suit under the FCA against United and its officer-owners. Using Model's invoices to the Government, the district court determined that there were thirty-five claims. The circuit court, however, concluded that because there was only one subcontract involved, there was just one claim. *Id.* at 308.

The Supreme Court disagreed with both the district court and the circuit court's determination of what constituted a claim under the FCA. As for the circuit court's interpretation,

---

[2] *Bornstein* addressed a prior version of the FCA in which penalties were deemed forfeitures, and were limited to $2,000 per claim. In addition, damages were doubled rather than trebled. *See Bornstein*, 423 U.S. at 316-17.

4

the Supreme Court stated that using the number of contracts to determine the number of claims "would ignore the plain language of the statute," as the FCA "focuses on false claims, not on contracts." *Id.* at 311. Next, the Supreme Court determined that the district court erred in finding thirty-five claims because the district court's analysis focused on Model's actions rather than the actions of United.

The *Bornstein* Court observed that the FCA "penalizes a person for his own acts, not for the acts of someone else." *Id.* at 312. While United certainly caused Model to submit false claims to the government, the Court noted, United did not cause Model to submit a specific number of claims. The fact that Model submitted thirty-five invoices, rather than some other number, was "wholly irrelevant, completely fortuitous and beyond United's knowledge and control[,]" according to the Supreme Court. *Id.* at 312. Consequently, the Supreme Court concluded as follows

> A correct application of the statutory language requires, rather, that *the focus in each case be upon the specific conduct of the person from whom the Government seeks to collect the statutory forfeitures*. In the present case United committed three acts which caused Model to subit [sic] false claims to the Government–the three separately invoiced shipments to Model. If United had not shipped any falsely branded tubes to Model, Model could not have incorporated such tubes into its radio kits and would not have had occasion to submit any false claims to the United States. When, however, United dispatched each shipment of flasely [sic] marked tubes to Model, it did so knowing that Model would incorporate the tubes into the radio kits it later shipped to the Government, ant [sic] that it would ask for payment from the Government on account of those tubes. Thus, United's three shipments of falsely branded tubes to Model caused Model to submit false claims to the United States, and United is thus liable for three $2,000 statutory forfeitures representing the three separate shipments that it made to Model.

*Id.* at 313 (emphasis added).

In *United States v. Krizek*, 111 F.3d 934 (D.C. Cir. 1997), the District of Columbia Circuit also addressed what constitutes a claim for FCA purposes. *Krizek* involved a psychiatrist's

5

submissions for Medicare reimbursement. The claims were submitted on a form known as the "HCFA 1500" ("Form 1500"). On each Form 1500, the psychiatrist's wife (who maintained the billing records) used a five-digit code from the American Medical Association's Current Procedures Terminology Manual (the "CPT code") to identify the services for which reimbursement was sought. The Form 1500 pertained to a single patient but could include a host of CPT codes if the patient was treated on several occasions before the Form 1500 was submitted. *Id.* at 936. Following the recommendation of a special master, the district court treated each CPT Code as a unique false claim, despite the fact that multiple CPT codes appeared on the same Form 1500. *Id.* at 937.

The District of Columbia Circuit determined that the district court erroneously treated each CPT code as a separate claim when computing penalties under the FCA. Instead, the *Krizek* court ruled, each Form 1500 constituted a claim, even if the Form 1500 included multiple fraudulent CPT codes. *Id.* at 938-39 (citing *Bornstein*, 423 U.S. at 307, 313; *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 552 (1943) (finding that a false claim was submitted for each project with the government although each project involved multiple forms); *Miller v. United States*, 550 F.2d 17, 24 (Ct. Cl. 1977) (finding that a contractor made five false claims through monthly bills to government despite fact that the bills included multiple invoices); *United States v. Woodbury*, 359 F.2d 370, 378 (9th Cir. 1966) (finding that applications and not the individual documents attached to applications were claims).) The key, the circuit court concluded, was to focus on the defendant's conduct and to ask the following: "[w]ith what act did the defendant submit his demand or request and how many such acts were there?" *Krizek*, 111 F.3d at 939. The manner in which the Government chooses to process a claim is irrelevant, according to the court in *Krizek*, in

6

determining whether a defendant in fact submitted a claim. *Id.* In making this finding, the District of Columbia Circuit stated the following

> Our conclusion that the claim in this context is the HCFA 1500 form is supported by the structure of the form itself. The medical provider is asked to supply, along with the CPT codes, the date and place of service, a description of the procedures, a diagnosis code, and the charges. The charges are then totaled to produce one request or demand—line 27 asks for total charges, line 28 for amount paid, and line 29 for balance due. The CPT codes function in this context as a type of invoice used to explain how the defendant computed his request or demand.

*Id.* at 940. Moreover, the *Krizek* Court noted, had it adopted the Government's position that each CPT code constituted a claim, it would have enabled the government to seek "an astronomical $81 million worth of damages for alleged actual damages of $245,392." *Krizek*, 111 F.3d at 940. *See also United States v. Speqtrum, Inc.*, No. 10-2111, 2016 WL 5349196, at *4 (D.D.C. Sept. 23, 2016) (following *Krizek* in concluding that invoices, not the individual false entries in the invoices, were claims); *Cantrell v. New York Univ.*, 326 F. Supp. 2d 468, 470 (S.D.N.Y. 2004) ("One invoice constitutes one false claim, even thought it contains numerous individual entries, and a false claim is made when the invoice is presented for payment." (citing *Krizek*, 111 F.3d at 938-40)).

With the statutory language and case law in mind, the Court turns to the parties' arguments.

## ANALYSIS

Individual Line Entries Versus Form 1500s

Defendant argues that Plaintiffs improperly count every line entry, in the spreadsheet that was produced by the MAC, as a claim. Defendant continues that the correct measurement of a claim is the HCFA 1500 form, as was the case in *Krizek*. BSNC's Br. at 3-8. The Court agrees. As *Bornstein* instructs and as echoed in *Krizek*, the focus in determining a claim under the FCA is on Defendant's actions, not how a MAC aggregated the information after it was supplied by BSNC (or, for that matter, how the MAC produced the information in discovery). Thus, the Form 1500

7

represents a claim, regardless of the number of diagnostic codes or line entries included on each form.

This case, however, presents a wrinkle. Plaintiffs indicate that BSNC refused to produce relevant Form 1500s in discovery. Plfs' Opp. at 13. BSNC replies that the "production of the physical HCFA-1500 forms is unnecessary for this analysis." BSNC Reply at 1. The Court does not have complete information as to what BSNC did or did not produce in discovery. But if BSNC failed to provide sufficient discovery to enable Plaintiffs to calculate the total number of Form 1500s at issue, the Court will certainly entertain future arguments as to the appropriate remedy for BSNC's failure to produce the very information that it now argues, and with which the Court agrees, is the appropriate measure to determine the number of claims that it submitted. The Court will set forth a briefing schedule as to this issue.

Unprocessable, Adjusted or Voided Line Entries & Duplicate Submissions[3]

Plaintiffs take the position that if, for example, a claim was submitted by BSNC and then resubmitted because it was at first unprocessable, and then resubmitted again because it was voided, then BSNC is liable for three false claims (the initial presentment, the first resubmission, and the second resubmission). Plfs' Opp. at 11-20. Of course, if BSNC was not reimbursed for any of the three submissions then no damages would result. But this would not absolve BSNC of

---

[3] As noted in the previous section, the Court finds that the proper measure for a claim is the Form 1500, rather than line entries from a spreadsheet that was produced by the MAC during discovery. As also noted, however, Plaintiffs contend that Defendant refused to turn over relevant Form 1500s in discovery. Consequently, the Court may have to adjust its finding once the Court receives more information about the issue from the parties.

Further, the Court will refer to line entries in this section because that is the manner in which the parties' briefed the issue. The Court refers to line entries to not confuse the issue, but this nomenclature does not change the Court's ruling concerning what document or information constitutes a claim under the FCA.

8

liability under the FCA as to statutory penalty. Yet, it seems that Plaintiffs are attempting to recover a monetary penalty between $5,000 to $10,000 for each of the three submissions. Plaintiffs, however, provide no precedent to support their position and are seemingly attempting to seek the same type of windfall that was frowned upon by the District of Columbia Circuit in *Krizek*. *See Krizek*, 111 F.3d at 940 (stating that had the court accepted the government's argument that each CPT code was a claim it would have resulted in an "astronomical" amount of penalties). The Court also could not find any precedent to support Plaintiffs' argument. Thus, the Court concludes that if BSNC was seeking reimbursement for the same item(s), but did so through several submissions, BSNC is only liable for one claim under the FCA. The reason is that the government would only, at most, have paid for the item(s) once.

There is one caveat to this ruling. If BSNC sought to have the same item(s) paid for more than once (*i.e.* double-billing) then the later submission would constitute a false claim. *See Hutchins*, 253 F.3d at 184 (stating that the FCA encompasses each claim that could result in economic loss to the government). On the other hand, and as noted, if BSNC only sought to have the Government pay for the item(s) once, and made multiple submissions seeking the single payment, then the multiple submissions would constitute one claim. *Cf. Schwedt*, 1994 WL 118222, at *2-3 (stating that oral requests for payments and readjustments were not separate claims as they "merely echo claims that [defendant] had already submitted . . . or intended to and eventually did submit"). For example, BSNC argues that it made erroneous duplicate submissions. BSNC's Br. at 13-14. If the facts are clear that BSNC made an honest mistake in submitting the duplicate submission, and was only seeking a single payment, then the duplicate submission would not be considered an additional claim. If, however, there is evidence to support a finding that BSNC was actually seeking a double payment for the same item(s), then BSNC's state of mind in

submitting the duplicate submission would be a question of fact for the jury. *Krizek*, 111 F.3d at 939 ("Whether a defendant has made one false claim or many is a fact-bound inquiry that focuses on the specific conduct of the defendant.").

As to unprocessable line entries, BSNC argues that because the government would never have paid for the item(s), the submissions cannot be considered a claim. BSNC's Br. at 10-11. The Court disagrees. The fact that the Government did not pay for the item (and never would have) means that the Government did not suffer any damages. BSNC, however, can still be subject to a monetary penalty under the FCA if the submission otherwise meets the definition of a claim. Again, in determining whether a submission constitutes a claim, the Court reviews the issue based on the action of a defendant and does not consider how the government processed the information. *Bornstein*, 423 U.S. at 313. In addition, attempts are subject to liability under the FCA. *Hutchins*, 253 F.3d at 184. Of course, if the unprocessed claims were later resubmitted properly, then (as discussed above) the two submissions would nevertheless constitute one claim because BSNC was only seeking a single payment for the same item(s).

Federal Rule of Evidence Rule 404(b)

Defendant also argues that evidence regarding the individual line entries should also be precluded under Federal Rule of Evidence Rule 404(b). Defendant contends that the individual line entries are irrelevant to determining whether it violated the FCA and fail to establish BSNC's knowledge or intent to violate the FCA. BSNC's Br. at 17. Rule 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Rule 404(b)(2), however, provides that such evidence "may be admissible for another purpose, such as

proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

As discussed, Plaintiffs may seek actual damages under the FCA, and are therefore entitled to prove such damages. Consequently, to the extent that Plaintiffs intend to use individual line entries to establish the amount of money that the government actually paid as a result of BSNC's allegedly false claims, the line entries are admissible. The Court, however, will reserve on the remainder of Defendant's Rule 404(b) argument until it receives more information from the parties regarding Defendant's production (or lack thereof) of the Form 1500s.

## **ORDER**

For the foregoing reasons, and for good cause shown

IT IS on this 24th day of September, 2018

**ORDERED** that Defendant Boston Scientific Neuromodulation Corporation's motion *in limine* (D.E. 420) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that the HCFA 1500 forms shall be used to determine the number of false claims submitted in this matter unless Defendant did not provide sufficient information during discovery to enable Plaintiffs to calculate the number of HCFA 1500 forms at issue; and it is further

**ORDERED** that as to whether Defendant failed to provide sufficient information during discovery to enable Plaintiffs to calculate the number of HCFA 1500 forms at issue, the following briefing schedule shall apply. The briefs shall address the substantive issue and the potential remedy if Defendant did in fact fail to provide sufficient information. Plaintiffs shall submit a brief no longer than fifteen (15) double-spaced pages by **October 5, 2018**; Defendant shall submit an opposition brief no longer than fifteen (15) double-spaced pages by **October 12, 2018**; and

Plaintiffs shall submit a reply brief (if they so choose) no longer than five (5) double-spaced pages by **October 17, 2018**; and it is further

**ORDERED** that any unprocessed, voided, adjusted, or duplicate submissions by Defendant that only sought one payment for the same item(s) in the multiple submissions shall be treated as a single claim for FCA purposes; and it is further

**ORDERED** that any unprocessed, voided, adjusted, or duplicate submissions by Defendant that sought more than one payment for the same item(s) in the multiple submissions shall each be treated as separate claims for FCA purposes.

John Michael Vazquez, U.S.D.J.