UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* WENDY A. BAHNSEN, et al.,<br><br>        **Plaintiffs/Relators,**<br><br>v.<br><br>BOSTON SCIENTIFIC NEUROMODULATION CORPORATION,<br><br>        **Defendant.**<br><br>-------------------------------------------------------x<br><br>BOSTON SCIENTIFIC NEUROMODULATION CORPORATION,<br><br>        **Counterclaim-Plaintiffs,**<br><br>WENDY BAHNSEN AND CAROLINA FUENTES,<br><br>        **Counterclaim-Defendants.** | Civil Action No. 11-cv-1210 (JMV) (SCM)<br><br>**DECLARATION OF JUSTIN P. WALDER IN SUPPORT OF MOTION FOR ATTORNEYS' FEES** |

I, Justin P. Walder, declare as follows:

1. I submit this Declaration in support of the Motion for Attorneys' Fees.

2. I was asked by counsel for Relators to consult with them and offer my assessment of the reasonableness of counsel's application for attorneys' fees, costs, and expenses in this matter.

3. In offering my opinions, I have utilized the factual statements as set forth in the memorandum of law in support of fees, costs, and expenses and the Declaration of Jordan Connors in support of the same.

4. Based on my review of the materials provided to me by Relators' counsel, and my experience in over 50 years of complex litigation in New Jersey state and federal courts, I believe that the fees and expenses requested are reasonable and necessary under the circumstances of this case. I hold these opinions to a reasonable degree of certainty based on my education, training, knowledge, and experience as a New Jersey lawyer who has actively practiced before the United States District Court of New Jersey and New Jersey state courts for decades.

## Qualifications

5. I am an attorney duly licensed to practice law in the State of New Jersey since 1961 and a member in good standing. I am admitted to practice in the United States Court of Appeals for the Second and Third Circuits, as well as the United

States Supreme Court. I am currently a name partner and co-chair of the Litigation practice at Pashman Stein Walder Hayden.

6. I am a Fellow of the American College of Trial Lawyers, served as Co-Chair of the New Jersey Fellows of the American Bar Foundation, and a member of the American Board of Trial Advocates, Association of Trial Lawyers of America, and Trial Attorneys of New Jersey.

7. I have served as a member of the New Jersey Supreme Court Committee on Fee Arbitration, New Jersey Supreme Court Commission on Rules of Professional Conduct, and New Jersey Supreme Court Board on Trial Attorney Certification. I am familiar with the norms in New Jersey state and federal courts concerning attorneys' fees.

8. I have served as New Jersey state deputy attorney general and as assistant Essex County prosecutor in charge of business fraud and economic crimes. In addition to my active litigation practice, I have served as designated special counsel to the New Jersey Supreme Court and as counsel to the New Jersey Administrative Office of the Courts. I was designated as a Special Master by the United States District Court of New Jersey in In the Matter of Prudential Insurance Company of America Sales Practices Litigation. I have also served as an adjunct professor at Rutgers University School of Law and as an instructor for the New Jersey Institute of Continuing Legal Education, a master and lecturer for the New

Jersey Inns of Court, and a faculty member of the New Jersey Judicial College. I am an associate editor of the *New Jersey Law Journal*.

9. I have been the recipient of the New Jersey State Bar Foundation Medal of Honor, the highest award in recognition of professional excellence and accomplishments in the law and contribution to the improvement of the justice system for the betterment of the legal profession; the New Jersey Law Journal Distinguished Leader Award; the New Jersey Association of Justice Gerald B. O'Connor award, honoring veteran trial lawyers who have exhibited skill, creativity, and professionalism; the Daniel J. O'Hern Award, the New Jersey Bar Association's highest honor; and the Federal Bar of New Jersey William J. Brennan, Jr. Award. I have consistently been recognized as one of the top lawyers in New Jersey and nationwide by the *New Jersey Law Journal*, *Best Lawyers in America*, *Chambers USA*, *Super Lawyers*, and *Martindale-Hubbell*, among others.

10. I am being compensated a flat fee of $20,000 in connection with my consulting and the preparation and filing of this Declaration. The opinions offered in this Declaration are my own, and the above compensation is not contingent in any way on the contents of this Declaration.

**Background**

11. The relevant legal standards regarding requests for attorneys' fees, costs, and expenses include the following:

4

    a. Under the False Claims Act, Relators are entitled to an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. Such expenses, fees, and costs shall be awarded against the defendant.

    b. An accepted method in the Third Circuit for determining reasonable attorneys' fees to be awarded under the False Claims Act is to multiply the reasonable number of hours expended by the reasonable hourly rate—*i.e.*, the "lodestar" method. There is a "strong presumption" that the lodestar represents a reasonable fee award.

    c. To prevent fee applications from spawning burdensome litigation, courts seek to achieve "rough justice," rather than "auditing perfection," in determining a reasonable fee award.

    d. In determining a reasonable fee award, courts may take into consideration, among other things, the risk of no recovery, the law firm's advancement of litigation costs and expenses, the experience, skill and performance of counsel, and the complexity of the case.

12.   I have reviewed the materials submitted by Relators in connection with this fee application, the detailed list of the services provided, along with the background and experience of the attorneys involved in this matter.

13. I understand that this case was complicated by a number of factors, including:

    a. the Government's non-intervention in the case;

    b. the disqualification of prior counsel and the inability to make use of their work product;

    c. difficulties involved in obtaining complete data on the claims for payment Boston Scientific Neuromodulation Corporation ("BSNC") submitted to Medicare;

    d. the labor-intensive process of reviewing and sorting medical records produced by BSNC;

    e. significant additional discovery after taking over the case, which included extensive depositions;

14. While I did not participate in any of the settlement discussions in this case, I have seen email correspondence following an unsuccessful settlement conference in January 2018 in which BSNC indicated that it would not be prepared to mediate this dispute until after resolution of the motion *in limine* concerning the number of claims in this case, which I have been informed did not take place until shortly before the scheduled trial date in this case. *See* Connors Decl. Ex. 1. As a result, I understand this position by BSNC added substantial litigation time.

15. I also understand that prior to filing this motion, Relators attempted to mediate this fee dispute with defendant BSNC before Hon. Layn Phillips, a former federal judge with an established mediation practice. I further understand that the dispute could not be resolved through mediation.

### Susman Godfrey's Fee Request Is Reasonable

16. Based on my knowledge of the circumstances of this case and the materials provided by Relators' counsel, the work performed by Susman Godfrey was necessary to the successful prosecution of this action—particularly to counter the vigorous defense by highly experienced and respected counsel for BSNC. In my opinion, the rates charged by Susman Godfrey are appropriate and reasonable for a case of this nature and complexity. Accordingly, the time and expenses committed to this case by counsel are reasonable and necessary.

17. A number of factors support the reasonableness of the fees and expenses requested by Susman Godfrey here, including:

   a. <u>The risk incurred by Susman Godfrey</u>. I understand that Susman Godfrey invested millions of dollars in professional time and nearly $1 million in expenses with no assurance of recovery. I am also mindful that due to the Government's non-intervention in this case, Susman Godfrey acted here as "private attorney general," risking their time and money to ultimately benefit the Medicare system and public. I

understand the lion's share of the recovery in this case will go to the Government. Susman Godfrey accepted the case without any guarantee of payment and is seeking only its ordinary hourly rates.

b. <u>The reasonableness of the fees and expenses</u>. I understand that Susman Godfrey kept contemporaneous time and expense records and those records reflect time and expenses reasonably incurred and necessary to the successful prosecution of this case, particularly given the particular circumstances and difficulties of this case. The case was vigorously prosecuted and defended by sophisticated counsel and took many years to resolve. *See* Connors Decl. ¶¶ 4-12. The fees sought are also inherently discounted given that fees and expenses attributable to prior counsel, who investigated and litigated this case for over four years, are not included in Relators' fee application. This is so in light of the Supreme Court's direction that "auditing perfection" is not necessary or even appropriate in assessing a fee application, Susman Godfrey should be reimbursed in full for the efforts invested in this case.

c. <u>The success achieved</u>. I am informed that the results ultimately obtained based on Relators' whistleblowing lawsuit brought substantial taxpayer dollars back to the Government—approximately five times the Government's actual damages, making the award an amount that

Defendant has argued was the absolute maximum amount permitted by law. *See* Connors Decl. ¶¶ 11-12. I also understand that the value of this case to the Government exceeds its monetary value, insofar as the District Court's rulings in this case provided informative references as to the Medicare rules and regulations, as well as applications of False Claims Act case law, that will be useful to the Government and Relators in prosecuting False Claims Act cases in the future. Moreover, the public policy of the False Claims Act encourages awarding Relators' counsel the full amount of their fees and expenses, regardless of the underlying amount of the recovery, in order to generally provide adequate and appropriate incentives for Relators' counsel to pursue meritorious False Claims Act litigation.

18. In my experience, in assessing the reasonableness of an applicant's request for attorneys' fees, it would be appropriate for the court to consider counsel's blended hourly rate where, as here, there is a wide range of billing rates—the blended rate can help indicate whether more senior attorneys, with higher billing rates, appropriately delegated tasks to more junior attorneys and staff, with lower rates.

19. I have been informed that the hourly rate that Relators' counsel is requesting in this litigation amounts to a blended rate of $618 per hour. *See* Connors Decl. ¶ 24. Based on my understanding of Susman Godfrey's attorneys' skill, the

result obtained, and my knowledge of billing rates by lawyers in the New York/New Jersey metropolitan area, this rate is reasonable.

20. The rates of the individual timekeepers constituting Susman Godfrey's total blended rate are also reasonable. Mr. Carmody's rate, while seemingly high at $1,900 per hour, is reasonable in light of the other factors discussed, including his stature and reputation as one of the nation's leading trial lawyers, and the complex circumstances of this case. *See* Connors Decl. ¶¶ 13-17. Mr. Carmody's investment of time is also considerably less than the other team members working the case, and his efforts as lead trial counsel appropriately focused on trial depositions, arguments before the Court, and trial preparation. *See* Connors Decl. Ex. 9. Mr. Carmody did the work befitting his rate, as reflected in Susman Godfrey's significantly lower blended rate of $618, indicating that Mr. Carmody appropriately delegated tasks to more junior members of his team and staff—again confirming why the blended rate is the appropriate measure of reasonableness. The rates of other Susman Godfrey attorneys and Mr. McGuire, ranging from $400 to $1050 are also reasonable in light of the other factors discussed, their respective backgrounds and experience levels, and the complexity of this case. *See* Connors Decl. ¶ 17. The rates of Susman Godfrey's staff attorneys and administrative staff, ranging from $125 to $325, are also fair and reasonable. *See* Connors Decl. ¶ 18.

21. Based on the exceptional results obtained in this complex case, the Relators' request for reimbursement of Susman Godfreys' fees, costs, and expenses is reasonable and appropriate.

22. In providing my opinion, I am mindful of the presumption that an attorney's lodestar constitutes a reasonable fee award; the risk taken by Relators' counsel in prosecuting this case on behalf of the United States on a contingent basis; and the overall aim of achieving "rough justice" rather than "auditing perfection" in determining a reasonable fee award. In light of these guiding principles, and based on my understanding of the particular circumstances of this case and my review of the materials submitted in support of Relators' fee application, I conclude that the requested fees and expenses are reasonable and necessary.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and understanding.

Dated: June 21, 2019

Justin P. Walder, Esq.