William Christopher Carmody
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas
32nd Floor
New York, NY 10019-6022
Phone: (212) 336-8330

Grant W. McGuire
MCMANIMON, SCOTLAND & BAUMANN, LLC
75 Livingston Avenue
2nd Floorf
Roseland, NJ 07068
Phone: (973) 622-4868

*Attorneys for Relators/Counterclaim-Defendants*
(Additional attorneys on the signature page)

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* WENDY A. BAHNSEN, et al., <br><br> Plaintiffs/Relators, <br><br> v. <br><br> BOSTON SCIENTIFIC NEUROMODULATION CORPORATION, <br><br> Defendant. <br> ---------------------------------------------------------------x <br> BOSTON SCIENTIFIC NEUROMODULATION CORPORATION, <br><br> Counterclaim-Plaintiffs, <br><br> v. <br><br> WENDY BAHNSEN AND CAROLINA FUENTES, <br><br> Counterclaim-Defendants. | Civil Action No. 11-cv-1210 (JMV) (SCM) <br><br> **REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES PURSUANT TO 31 U.S.C. § 3730(d)** <br><br> **MOTION DAY: JULY 15, 2019** <br><br> <u>ORAL ARGUMENT REQUESTED</u> |

# **TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION .....................................................................................................1

    I.    SG's RATES ARE REASONABLE......................................................2

        A.    SG's Rates Are Reasonable, As Confirmed By SG's Reasonable Blended Rate ...........................................................3

        B.    BSNC Tries To Benchmark Against Non-Comparable Rates.................................................................................................4

        C.    Although Unnecessary To Determining The Reasonableness Of SG's Fees, Exceptions To The "Forum Rate" Rule Apply ..........................................................5

    II.    SG's HOURS AND EXPENSES ARE REASONABLE ......................7

        A.    SG's Non-Frivolous Motions Were The Product Of BSNC's Own Discovery Misconduct..........................................7

        B.    SG's Research Time and Expenses Were Reasonable ...............9

        C.    SG's Discovery-Related Time Was Reasonable ......................10

        D.    SG's Travel Time and Expenses Were Reasonable ..................11

        E.    SG's Remaining Expenses Were Reasonable...........................12

    III.    SG's TOTAL VICTORY WARRANTS NO FEE REDUCTION..................................................................................13

CONCLUSION........................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Boles v. Wal-Mart Stores, Inc.*,
  No. CIV.A. 12-1762, 2015 WL 4653233 (D.N.J. Aug. 5, 2015) ..........................5

*Connor v. Sedgwick Claims Mgmt. Servs., Inc.*,
  No. CIV.A. 09-CV-1140, 2012 WL 6595072 (D.N.J. Dec. 18,
  2012) ...................................................................................................................5

*Dartell v. Tibet Pharm. Inc.*,
  2017 WL 2815073 (D.N.J. June 29, 2017) (Vazquez, J.) .................................3, 4

*Fox v. Vice*,
  563 U.S. 826 (2011) ..........................................................................................12

*Lanni v. New Jersey*,
  259 F.3d 146 (3d Cir. 2001) ................................................................................4

*P. Van Hove BVBA v. Universal Travel Group, Inc.*,
  2017 WL 2734714 (D.N.J. June 26, 2017) (Vazquez, J.) .................................3, 4

*United States ex rel. Palmer v. C&D Techs., Inc.*,
  897 F.3d 128 (3d Cir. 2018) ..................................................................5, 11, 14

*Pharmacia Corp. v. Motor Carrier Servs. Corp.*,
  No. CIV. 04-3724 (GEB), 2008 WL 108947 (D.N.J. Jan. 9, 2008) .....................5

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) ................................................................................3

## **INTRODUCTION**

Having waged a war of attrition for years—refusing to concede on any issue, and refusing to meaningfully discuss a resolution of this case until the eleventh hour—BSNC now spins a false narrative of what happened, and asks this Court to take the red pen to SG's fees and expenses in a manner directly contrary to the Supreme Court's instruction. Then, having failed to identify any superfluous hours or expenses, BSNC asks the Court to impose an entirely arbitrary haircut to SG's time and expenses. The Court should reject this invitation.

BSNC calls SG's individual rates unreasonable but ignores SG's eminently reasonable blended rate, in line with blended rates explicitly approved by this Court. And BSNC calls SG's hours unreasonable but quibbles with only a handful of entries which, in fact, correspond to work essential to the prosecution of this case, much of which was the direct result of BSNC's own litigation misconduct. BSNC also unfairly asks the Court to evaluate its criticisms in a vacuum, after BSNC refused to provide its own billing and expense records. Without providing that context, it is unfair and unjust to accept BSNC's accusations that SG's rates, hours, and expenses were out of proportion to the needs of this case.

Worst of all, BSNC runs away from its previous representations about the maximum possible value of this case in an effort to minimize SG's success. SG achieved a result that BSNC argued was ***more than the maximum permitted by the***

1

***U.S. Constitution***. That is an astounding achievement in any case, let alone in a complex FCA case like this. And while BSNC now calls this case "run of the mill," that's not what BSNC said about this "complex" case in real time. SG rescued a doomed case to secure a seven figure recovery, the sort of result that ordinarily would justify a lodestar multiplier, not an arbitrary reduction as BSNC requests.

Given SG's evidence of its lodestar, at a reasonable blended rate, number of hours, and amount of expenses, the burden shifted to BSNC to prove SG's fees and expenses unreasonable. BSNC cannot meet that burden. BSNC's efforts to nitpick at SG's fees and expenses, to re-write the history of this litigation, and to cut SG's time spent and expenses paid to successfully prosecute this case, should be rejected. The Court should exercise its broad discretion to grant SG's fee application in full.

## I. SG's RATES ARE REASONABLE

SG has met its burden to prove its rates are reasonable. SG provided evidence of its blended rate and demonstrated that SG's blended rate is consistent with rates customarily charged in this District, as confirmed by decisions of this Court. BSNC's response doesn't even address SG's blended rate, and its expert, Edward Dauber, offers nothing but the ***single-sentence conclusion*** that SG's blended rate is too high, without explaining why. Having failed to address SG's evidence of its reasonable blended rate in this community, BSNC cannot meet its burden to demonstrate that SG's requested fees are unreasonable.

### A. SG's Rates Are Reasonable, As Confirmed By SG's Reasonable Blended Rate

As confirmed by Third Circuit precedent and by prominent New Jersey practitioner Justin Walder, it is appropriate to consider the blended rate in determining the reasonableness of counsel's fees. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005); Dkt. 469-2 ("Walder Decl.") ¶ 18; Motion at 5. BSNC, whose brief is silent on the issue, apparently agrees.

SG's blended rate falls well within a reasonable range for this District. Mr. Walder backs this up. Walder Decl. ¶ 19 (confirming SG's blended rate of $618 is reasonable). So do decisions of this Court approving blended rates nearly identical to those requested by SG. *See* Motion at 22; *Dartell v. Tibet Pharm. Inc.*, 2017 WL 2815073, at *11 (D.N.J. June 29, 2017) (Vazquez, J.) (approving $670 blended rate); *P. Van Hove BVBA v. Universal Travel Group, Inc.*, 2017 WL 2734714 (D.N.J. June 26, 2017) (Vazquez, J.) (approving $644 blended rate). BSNC ***makes no effort to distinguish these cases***; in fact, BSNC's brief ***ignores SG's blended rate entirely***.

BSNC's only challenge to SG's blended rate comes through its expert, Mr. Dauber, who offers nothing but the ***naked conclusion*** that "the Susman Godfrey blended rate is outside the range of fees charged for complex commercial litigation in New Jersey." Dauber Decl. ¶ 36. Why? What is the proper range? Why is SG outside the proper range? Mr. Dauber's opinion raises more questions than it

answers, and his say-so is **directly contrary to the decisions of this Court** finding SG's blended rate entirely in line with prevailing rates in this community.

Mr. Dauber's implication that it was improper include paralegals in SG's blended rate, Dauber Decl. ¶ 34, is likewise **directly contradicted** by this Court's decisions in *Dartell* and *Van Hove*, which approved blended rates including paralegal time.[1] Mr. Dauber also cannot explain why SG's blended rate is different from the "customary usage"; SG's blended rate calculates SG's fees using "the same rate regardless of whether the attorney is a junior associate or senior partner." Dauber Decl. ¶ 34. And while Mr. Dauber compares SG's rates from years ago, Dauber Decl. ¶ 28, Third Circuit precedent is clear that the "current market rate is the rate at the time of the fee petition." *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001).

SG should be awarded fees at its customary rates, which reflect a blended rate consistent with rates in this community. BSNC provides no evidence to the contrary. This failure should be the beginning and the end of BSNC's attack on SG's rates.

### B.   BSNC Tries To Benchmark Against Non-Comparable Rates

Even on an individual-timekeeper basis, BSNC cannot demonstrate SG's rates are unreasonable. Worse, BSNC leaves the Court at sea by failing to provide a

---

[1] *See Dartell*, D.N.J. No. 14-cv-3620-JMV-JBC, Dkt. 267-2 at 3-5; *Van Hove*, D.N.J. No. 11-cv-2164-JMV-JBC, Dkt. 215-2 at 3. Regardless, SG's attorney-only blended rate still falls within the reasonable range approved by this Court. *See* Dkt. 469-3 (Connors Decl.) ¶ 24 (calculating attorney-only blended rate of $692.09).

reasonable alternative to SG's customary rates. While BSNC faults Relators for looking to prevailing rates in the northern N.J./N.Y. metro area, BSNC asks the Court to benchmark SG's rates against the ***entirely non-comparable Philadelphia market***. Opp. at 12-13. Contrary to BSNC's representation, however, the Third Circuit has endorsed the Philadelphia CLS scale only (and unsurprisingly) to help determine "prevailing market rates ***in Philadelphia***." *United States ex rel. Palmer v. C&D Techs., Inc.*, 897 F.3d 128, 133 (3d Cir. 2018) (quoting *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001) (emphasis added)).[2] Courts in this District specifically distinguish rates charged in the northern N.J./N.Y. metro area from invariably lower rates charged in the southern N.J./Philadelphia metro area.[3]

### C. Although Unnecessary To Determining The Reasonableness Of SG's Fees, Exceptions To The "Forum Rate" Rule Apply

Even if Newark were not considered part of the New York metro area, SG's fees would be justified under the exceptions to the "forum rate" rule. *First*, SG's

---

[2] In the D.N.J case discussing the CLS schedule cited by BSNC, there was no real dispute about the reasonableness of counsel's rates; so, use of the CLS scale was not materially at issue in D.N.J. or even discussed by the Third Circuit. *Boles v. Wal-Mart Stores, Inc.*, No. CIV.A. 12-1762, 2015 WL 4653233, at *6 (D.N.J. Aug. 5, 2015) (dispute over $25/hour "negligible"); 650 F. App'x 125, 129 (3d Cir. 2016).

[3] *See Pharmacia Corp. v. Motor Carrier Servs. Corp.*, No. CIV. 04-3724 (GEB), 2008 WL 108947, at *4 (D.N.J. Jan. 9, 2008) (approving rates comparable to "other New Jersey/New York metropolitan area firms"); *Connor v. Sedgwick Claims Mgmt. Servs., Inc.*, No. CIV.A. 09-CV-1140, 2012 WL 6595072, at *4 (D.N.J. Dec. 18, 2012) (distinguishing rates in "southern New Jersey" from higher rates typically charged in the "New York City metropolitan area (*i.e.*, northern New Jersey)").

"special expertise" with FCA litigation and complex commercial trials were essential to this case. Current posturing aside, in real life BSNC candidly recognized this case was unusually "complex." Dkt. 290. That is why BSNC itself hired four technical experts to defend the case. SG's knowledge of the FCA and mastery of the shifting legal landscape as this case progressed—including the Supreme Court's seminal *Escobar* decision, decided mid-case—allowed Relators to survive summary judgment. And SG's trial expertise, and its reputation as a firm ready and willing to take cases the distance, allowed for the settlement of this case on the eve of trial.

*Second*, local New Jersey counsel were not available or willing to take the lead on this case, and BSNC's own arguments prove as much. According to BSNC, "the fact that Susman Godfrey is the third law firm representing Relators in this case also shows how Relators had no difficulty finding counsel willing to represent them." Opp at 8-9 & n.4. To the contrary, Relators' rotating cast of counsel only underscores the difficulty Relators faced in retaining counsel to handle this matter.

Notably, local New Jersey counsel has never been lead counsel in this matter—not for Relators and ***not even for BSNC***. Rather, BSNC turned to the Global Head of the FCA practice at a renowned national law firm to handle this case. The Court should not indulge BSNC's cribbed view of the "forum rate" rule when BSNC itself turned to FCA-expert lawyers indisputably beyond the forum (namely, Washington D.C.). Unsurprisingly, the only firms that have been willing to take on

6

deep-pocketed Boston Scientific and its sophisticated FCA-expert counsel are other national law firms—firms with established FCA practices and the ability and resources to assume the risk of litigating this difficult contingent case. As for the specific need to hire SG, the proof is in the pudding: after 8+ years of litigation and several sets of counsel, only SG was able to bring this case successfully to resolution. SG meets any burden to justify its supposedly "non-forum" rates with ease.

## II. SG's HOURS AND EXPENSES ARE REASONABLE

Given BSNC's refusal to provide its own time entries or expenses, it cannot complain about SG's. In any event, BSNC fails to establish that any of SG's time or expenses were unreasonable or inadequately documented. BSNC cannot identify even a ***single hour*** of time that was unnecessary to the prosecution of this case. In fact, most of the hours that BSNC complains about now were the product of BSNC's own discovery misconduct and refusal to produce even the most basic case materials.

### A. SG's Non-Frivolous Motions Were The Product Of BSNC's Own Discovery Misconduct

BSNC's argument that SG engaged in "frivolous" motion practice is, in a word, frivolous. SG focused on obtaining only the most essential evidence for Relators to overcome summary judgment and take this case to trial—namely, BSNC's claims data and the supporting medical documentation (the "physician orders") determinative of whether those claims were "false" under the FCA.

7

BSNC now criticizes SG's persistent efforts to obtain the basic building blocks of this case, BSNC's "physician orders," Opp. at 22, but omits the crucial fact that ***BSNC eventually agreed to produce its physician orders***. Dkt. 233 at 3. Surely BSNC wouldn't have done so if SG's request were truly "frivolous." If BSNC had simply produced those documents from the start—as it was plainly obligated to do under Relators' discovery requests—the motion practice BSNC complains about now wouldn't have been necessary. But, having fought Relators tooth and nail before finally producing these basic physician orders, BSNC cannot complain about how much it cost Relators to pursue discovery to which they were clearly entitled.

BSNC also contests the fees SG incurred to contest the "dump" of nearly 1 million poorly-scanned and disorganized pages from WebXtender, Opp. at 23, but the fault again lies with BSNC. SG merely sought, as it was entitled under basic discovery rules, to review the "physician orders" in reasonably accessible form as kept in the ordinary course of business. BSNC resisted, trying to make Relators' review of the "physician orders" as difficult as possible, and succeeding in doing so. But what goes around comes around, and BSNC must pay the price for it now.

BSNC finally complains about the costs associated with Relators' appeal of Magistrate Judge Mannion's denial of their motion to compel claims data that BSNC had argued was inaccessible or did not exist. Opp. at 23. Depositions revealed, however, that BSNC had been hiding at least three readily accessible repositories of

claims data. Dkt. 262. Yet again, when BSNC realized it could no longer get away with its discovery abuses, it ultimately relented: BSNC *agreed* to an extension of fact discovery for Relators to pursue subpoenas to the third parties who maintained the data. Dkt. 279. Given that agreement, Relators withdrew their appeal. *Id.*

In short, BSNC says SG should not be reimbursed for the motions prompted by BSNC's own refusal to provide basic discovery that even BSNC eventually agreed Relators were entitled to get. Talk about chutzpah. If BSNC wanted to avoid paying for these motions, it should have abided by its discovery obligations in the first place. SG should be compensated for its work on these motions in full.

### B. SG's Research Time and Expenses Were Reasonable

BSNC also faults SG for spending too much time on research. But BSNC has itself acknowledged the "complex" nature of this case, Dkt. 290, and SG's need to litigate this case from scratch given prior counsel's disqualification, Opp. at 6 n.1. While BSNC suggests that SG's only "substantial briefing in this case related to summary judgment and *Daubert* motions," *see* Opp. at 18, in the next breath BSNC highlights the extensive motion practice spawned by BSNC's obstructionist discovery tactics, *see* Opp. at 23, not to mention research associated with motions *in limine*, mediation briefs, and the like. BSNC cannot meet its burden to show that ***any*** of the time SG spent conducting research (and the associated research expenses) were unreasonable or unnecessary to the successful prosecution of this case.

### C.    SG's Discovery-Related Time Was Reasonable

BSNC takes issue with the amount of time SG spent reviewing documents. When SG came on the scene, however, it had nearly five years of litigation history to catch up on. It is unsurprising, then, that SG dedicated substantial time from January to March 2016—the first three months after SG appeared in this case—to "reviewing documents." *Contra* Opp. at 18. The case history to be reviewed included not only extensive correspondence between the parties and with the Court, but also more than 50,000 documents and over 300,000 pages of discovery produced by BSNC, as well as thousands of pages of discovery produced by Relators. Particularly given this context, SG's entries are not impermissibly "vague." *Contra* Opp. at 15. As already explained in Relators' opening brief, all of SG's time was adequately documented consistent with governing case law in this Circuit. *See* Motion at 13-15.

BSNC also faults Mr. Carmody and Mr. Subramanian for engaging in some amount of document review or "attending to discovery issues" but, particularly in this early phase of SG's involvement, there were no more important tasks than getting a handle on where the case stood, identifying where the holes in discovery were, and strategizing about how to fill them. These senior partners performed no work below their pay grade and thus no reduction in their fees is appropriate. *Contra*

Opp. at 15.[4] In fact, this is precisely why the reasonableness of SG's *blended rate*, which BSNC ignores, is vital; it is the best evidence that SG prosecuted (and staffed) this case efficiently from top to bottom. *See* Walder Decl. ¶ 18; Motion at 5.

### D. SG's Travel Time and Expenses Were Reasonable

BSNC misconstrues Third Circuit precedent concerning compensation for travel time. The cases cited by BSNC specifically distinguish travel time *to and from the forum*, which typically is not compensable, from travel *outside the forum*, which typically is compensable.[5] Here, however, even SG's minimal travel to the District[6] should be compensated given the applicable exceptions to the "forum rate" rule already discussed. So should the $4,500 the two Relators incurred to travel across the country for a conference where the Court required their attendance (a dispute that perfectly captures the pettiness of BSNC's opposition to this fee application). The remainder of SG's travel involved compensable time traveling outside the forum

---

[4] BSNC also misleadingly suggests Mr. Carmody personally undertook significant document review, when his entries show only 6.8 hours "reviewing documents." Even then, Mr. Carmody performed only document review befitting his rate—*i.e.*, reviewing the hottest documents to prepare for key depositions and hearings.

[5] *E.g.*, *Palmer*, 897 F.3d at 134 ("travel time to and from the forum" not reimbursable, in contrast to "depositions held outside of the forum . . . as even counsel located in the forum area would have incurred travel time for those events").

[6] Entries referencing travel to New Jersey (and attributing 2 travel hours to "mixed" entries including both travel time and the underlying event), SG spent $13,175 in fees (15.5 hours) and $901.47 in expenses traveling to and from the forum. *See* Dkt. 469-12, IDs 2113621, 2152370, 2153114, 2165079, 2368172, 2418051, 2567646, 2569707; Dkt. 469-13, IDs 2428924, 2434277, 2449680, 2460997, 2593258.

11

and, because that travel was primarily for depositions held in California to accommodate BSNC's witnesses, any discount on SG's travel time is improper.[7]

As for SG's travel expenses, BSNC's nipping around the edges of those $100,000 is, in the scheme of this fee application, absurd. SG's extensive travel to and from California to accommodate BSNC's witnesses, to meet with the Relators,[8] and to attend the mediation with Judge Phillips, alone justifies the modest travel expenses at issue. BSNC, in seeking to scrutinize each and every travel expense, asks the Court to engage in exactly the sort of "green-eyeshade account[ing]" the Supreme Court has said it should not do. *Fox v. Vice*, 563 U.S. 826, 838 (2011).[9]

### E. SG's Remaining Expenses Were Reasonable

SG's remaining expenses were also reasonable. Again, BSNC has no basis to criticize SG's actual expenses when BSNC has refused to produce its own expense records, leaving the Court without a point of comparison for the expenses necessary

---

[7] Additionally, while SG acknowledges that many entries describe only "travel" to depositions, SG attorneys routinely filled that time preparing for those depositions.
[8] While BSNC pokes fun at travel expenses "for a meeting," Opp. at 26, time records confirm this was an in-person meeting with the Relators shortly after SG appeared—a reasonable expense to ensure SG and its clients were in sync and able to prosecute this case efficiently and effectively. Dkt. 469-12, IDs 2105063; 2105104; 2105644.
[9] In any event, the disbursement report only includes amounts ***actually reimbursed*** in accordance with SG's travel policies. To the extent BSNC has identified isolated examples beyond the stated policy, they were approved exceptions. For example, a hotel at $94 per night above the stated policy, Opp. at 26 n.14, meant no hotel in reasonable proximity to SG's N.Y. office was available at the standard policy rate.

to prosecute this hard-fought case. The amounts in question reflect ***money SG paid out of pocket***, and BSNC cannot establish any were unreasonable or unnecessary.

SG's largest expenses were expert witness fees, primarily attributable to Dr. Richard Baer, whose work evaluating BSNC's compliance with Medicare regulations went to the heart of this case. And Dr. Baer's time is, yet again, traceable to BSNC's own litigation conduct. BSNC faulted Dr. Baer for not personally reviewing every shred of medical documentation produced by BSNC. Dkt. 288. So, Dr. Baer went back and personally reviewed each and every "physician order" in BSNC's production—an unsurprisingly time-consuming task. Dkt. 416-1 at 43-44. BSNC cannot complain about Dr. Baer's significant investment of time reviewing the physician orders after BSNC threatened to exclude Dr. Baer's testimony for failing to make an adequate investment of time reviewing the physician orders.

BSNC also quibbles with $60,000 in printing/photocopy expenses—half of which was paid to directly to outside vendors—which again are entirely reasonable. While litigating this case for several years up to the eve of trial, SG engaged in document-intensive tasks including eighteen depositions, printing courtesy copies of voluminous motions, and preparation of trial exhibits.

### III.   SG's TOTAL VICTORY WARRANTS NO FEE REDUCTION

While SG only seeks its ***actual lodestar***—despite assuming substantial risk by handling this difficult case on a contingent basis—SG's success in this case

13

would ordinarily justify a *multiplier* on its fees, not the arbitrary and hefty haircut proposed by BSNC. The result obtained by SG was a complete victory, and the Court should ignore BSNC's after-the-fact attempt to argue otherwise.

BSNC and its expert *understate SG's success by a full 20%* when they say this case settled for only $2 million. Opp. at 4; Dauber Decl. ¶ 10. The full settlement amount was *$2.5 million—over five times the total amount spent* by the Government on the products at issue.[10] The result is even more astonishing given the Government's non-intervention, which typically ends an FCA case with no recovery. *See* Motion at 2, 8-9. And while BSNC now attempts to characterize that $2.5 million recovery as "limited success," in real time BSNC took the position that the maximum damages figure the U.S. Constitution would allow was $1,876,290.56 (four times actual damages of $469,072.64, irrespective of the treble damages permitted by the FCA). *See* Motion at 23-24. That means *SG beat BSNC's own view of a "perfect" recovery by over 33%* and obtained a recovery *beyond the constitutional maximum*.[11] SG should be compensated in full for this extraordinary result.

---

[10] [redacted]

[11] Defendants made no such representations in the cases BSNC cites to support a "success discount," and those cases are otherwise distinguishable. *E.g.*, *Payne*, Opp. at 29 (reductions based on outright loss as to several claims and defendants); *Palmer*, Opp. at 29 (reductions based on specific items court found unwarranted or excessive,

## CONCLUSION

This case was long, hard-fought, and fraught with risks. SG assumed those risks—Government declination, disqualified prior counsel, and significant discovery, damages and claims-related obstacles, just to name a few—for the public good. And SG overcame those risks, achieving an unprecedented result for the Government. In short, SG succeeded where others failed.

This Court has broad discretion to determine the amount of fees and expenses compensable in this matter. It should not, as BSNC asks, arbitrarily reduce SG's actual time and expenses to $3M based on math BSNC never explains, Opp. at 34, or brush aside SG's diligent efforts and exceptional success based on meritless attacks on SG's rates, hours, and results. As the Supreme Court has instructed, this Court's task is not to achieve "auditing perfection," but rather to ensure that the requested award achieves "rough justice." Considering all the facts, circumstances, and challenges of this case, SG's request for fees and costs is fair, reasonable, and should be granted in full. In addition to the $7,621,908.82 requested in SG's opening brief, $18,182.50 in fees have since been incurred, for a total of $7,640,091.32.

---

which BSNC has not established here); *Begole*, Opp. at 32 (BSNC attempts to minimize recovery-to-fee ratio based on damages for "various claims," but only FCA claim was eligible for fee award). *Graves*, Opp. at 31, a Miami case that had been run by local Florida counsel for years, is not probative of prevailing rates in this District and justifies no reduction in SG's fees. That said, as Relators argued in their opening brief, *Graves* confirms the propriety of awarding fees in a greater amount than the recovery obtained. *See* Motion at 24.

15

Date:  August 6, 2019

By: */s/  Grant W. McGuire*

William Christopher Carmody
Arun Subramanian
Mark Musico
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY   10019-6022
Phone:  (212) 336-8330
bcarmody@susmangodfrey.com
asubramanian@susmangodfrey.com
mmusico@susmangodfrey.com

Jordan W. Connors
SUSMAN GODFREY L.L.P.
1201 Third Ave., Suite 3800
Seattle, WA  98101
Phone:  (206) 516-3814
jconnors@susmangodfrey.com

Michael Gervais
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mgervais@susmangodfrey.com

Grant W. McGuire
MCMANIMON, SCOTLAND & BAUMANN, LLC
75 Livingston Avenue, 2nd Floor
Roseland, NJ 07068
Phone: (973) 622-4868

*Attorneys for Relators/Plaintiffs*